In re Louis Wayne DAVIS, Debtor.

Louis Wayne Davis, Appellant,

v.

Kenneth G. Mather, Chapter 7 Trustee;
State National Bank of Heavener; and
American Jawa, Limited, Appellees.

BAP No. EO–98–027.
Bankruptcy No. 97–71832.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Feb. 2, 1999.

Ordered for Publication Oct. 12, 1999.

Betty Outhier Williams, Gage and Williams Law Firm, Muskogee, Oklahoma, for Appellant.

Ron Wright, Wright, Stout & Fite, Muskogee, Oklahoma, for Appellee State National Bank of Heavener.

Michael E. Stubblefield, Fort Smith, Arkansas, for Appellee American Jawa, Limited.

Before McFEELEY, Chief Judge, CLARK, and ROBINSON, Bankruptcy Judges.

## OPINION

ROBINSON, Bankruptcy Judge.

Debtor Louis Wayne Davis appeals the order of the bankruptcy court denying confirmation of his Fourth Amended Chapter 13 bankruptcy plan and dismissing his Chapter 13 bankruptcy petition. For the reasons set forth below, we affirm.

## I. Background.

Louis Wayne Davis ("the Debtor") and his wife, Sandra Davis, filed for Chapter 7 relief in April 1995. That case was dismissed, and the Debtor and his wife filed another Chapter 7 petition on August 31, 1995. The Chapter 7 schedules listed $754,218.21 in unsecured claims, of which $2,551.50 was unsecured priority debt.

The Debtor was engaged in the business of selling tractors and farm equipment. In the course of the Chapter 7 proceedings, State National Bank of Heavener ("the Bank") and American Jawa filed objections to the Debtor's discharge pursuant to 11

U.S.C. § 523(a)(4) and (6),[1] alleging he had sold inventory out of trust and failed to account for the proceeds. The Bank obtained an agreed nondischargeable judgment against the Debtor in the amount of $25,000.00, which resulted from a settlement of the adversary proceeding during the trial wherein the parties agreed that the Bank's judgment was secured by a second mortgage against part of the Debtor's real estate. American Jawa obtained a judgment against the Debtor for $206,410.35, of which $170,363.00 was deemed nondischargeable. The Debtor and his wife received their Chapter 7 discharge on January 7, 1997.

On July 22, 1997, the Debtor alone filed the Chapter 13 proceeding that is the subject of this appeal. The Debtor's schedules showed all of his debts were in existence and were nondischargeable in the Chapter 7 proceedings. In August of 1997, the Chapter 7 Trustee filed an adversary proceeding seeking, among other relief, recovery of real property transferred to a third party and revocation of the Debtor's discharge.[2]

The Debtor filed a Fourth Amended Plan ("the Plan") proposing to pay $775.00 per month to the Chapter 13 Trustee for sixty (60) months. The Plan provided for the secured claims of Farm Services Agency and the Bank to be paid with the surrender of real property. Priority claims of the Internal Revenue Service and the Oklahoma Tax Commission in the amount of $36,644.92 and $2,579.97, respectively, were to be paid in full. The unsecured debt of $170,000.00, which consisted solely of American Jawa's claim, was to receive $702.60, or payback of approximately 0.4%.

The Bank and American Jawa objected to confirmation of the Plan, arguing that

---

1. Future references are to Title 11 of the United States Code unless otherwise noted.

2. We note that the Debtor filed his Chapter 13 petition after he received his Chapter 7 discharge but before the Chapter 7 proceedings were closed. A debtor who has been granted a discharge under one chapter under Title 11

may file a subsequent petition under another chapter even though the first case remains open, as long as the debtor meets the requirements for filing the second petition. *Grimes v. United States (In re Grimes)*, 117 B.R. 531, 536 (9th Cir. BAP 1990).

the Debtor had proposed the Plan in bad faith. The Chapter 7 Trustee also objected to the Plan because the Debtor failed to specifically describe what real property was to be surrendered to secured creditors, and because the Plan ignored the impact of the pending adversary proceeding in the event the Debtor's discharge was revoked. After a hearing, the bankruptcy court denied confirmation of the Plan and dismissed the Chapter 13 case, citing the suggested factors from *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983). The court found that the Debtor had significant debt which was determined nondischargeable in a previous Chapter 7 proceeding which he was seeking to discharge in the Chapter 13 and that the Debtor had abused the bankruptcy process, citing *Pioneer Bank v. Rasmussen (In re Rasmussen),* 888 F.2d 703 (10th Cir.1989). The court noted that the Debtor was proposing to surrender admittedly non-homestead real estate which was part of the Chapter 7 adversary proceeding. After holding that the Plan could not be confirmed, the court further found that the Debtor had no more disposable income to fund the Plan and therefore, could not propose a greater payback to unsecured creditors. Since the Debtor had received a discharge within the last six years, conversion was not an option and the court dismissed the case. This appeal followed.

## II. Appellate Jurisdiction.

This Court, with the consent of the parties, has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). Under this standard, we have jurisdiction over this appeal. The parties have consented to this Court's jurisdiction in that they have not opted to have the appeal heard by the United States District Court for the Eastern District of Oklahoma. *Id.* at § 158(c); 10th Cir. BAP L.R. 8001–1(a) and (d). The appeal was filed timely by the Debtor, and the bankruptcy court's Order is "final"

within the meaning of § 158(a)(1). *See* Fed.R.Bankr.P. 8001–8002.

## III. Standard of Review.

In reviewing an order of the bankruptcy court, an appellate court "reviews the factual determinations of the bankruptcy court under the clearly erroneous standard, and reviews the bankruptcy court's construction of [a statute] de novo." *Taylor v. I.R.S.,* 69 F.3d 411, 415 (10th Cir. 1995) (citations omitted).

A finding of fact is clearly erroneous only if the court has "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir.1972).

*Gillman v. Scientific Research Prods., Inc. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir.1995).

 Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review. *Robinson v. Tenantry (In re Robinson),* 987 F.2d 665, 668 (10th Cir.1993) (citations omitted). This Court reviews orders of dismissal of a bankruptcy case for an abuse of discretion, but reviews for clear error a finding of bad faith supporting such a dismissal. *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 938 (9th Cir. BAP 1997).

## IV. Discussion.

 Section 1325(a) provides that a bankruptcy court must confirm a Chapter 13 plan if it meets each of six requirements set forth in § 1325(a), and if the debtor proposes payments which meet the re-

quirements of § 1325(b).[3] The key requirement for purposes of this case is that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "Courts should not approve Chapter 13 plans which are nothing more than 'veiled' Chapter 7 plans. A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves 'particular scrutiny.' " *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir.1990)(quoting *In re Warren*, 89 B.R. 87, 95 (9th Cir. BAP 1988); other citations omitted).

■ "The party who seeks a discharge under Chapter 13 bears the burden of proving good faith. Best efforts under 11 U.S.C. § 1325(b), without more, are not enough." *Caldwell*, 895 F.2d at 1126 (citations omitted). A determination of good faith must be made on a case by case basis, looking at the totality of the circumstances. *Rasmussen*, 888 F.2d at 704. In evaluating whether a debtor has filed in good faith, courts should be guided by the eleven factors set forth in *Flygare*,[4] as well as any other relevant circumstances. In *Rasmussen*, the Tenth Circuit recognized that relevant factors include whether the debtor has unfairly manipulated the Bankruptcy Code. *Rasmussen*, 888 F.2d at 704 n. 3 (quoting *Education Assistance Corp.*

*v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987)).

■ The Debtor argues that the bankruptcy court's finding that his Plan was filed in bad faith was clearly erroneous because the court based its decision solely on Debtor's serial filings in Chapter 13 and Chapter 7 rather than the totality of the circumstances. The Debtor bases this argument on the court's failure to specifically address the *Flygare* factors in its opinion. However, this Panel has authority as a reviewing court to look to facts not specifically mentioned by the bankruptcy court that are in the record in order to find further support for the bankruptcy court's factual findings and inferences. *See Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993) (reviewing court has authority to affirm the bankruptcy court's judgment on any ground that is supported by the record); *In re Love*, 957 F.2d 1350, 1361–62 (7th Cir. 1992). Our independent review of the record leads us to conclude the bankruptcy court did address the *Flygare* factors by reference to the facts established by the evidence and the facts in the *Rasmussen* decision, which it found to be on point.

The bankruptcy court, after hearing all the evidence, concluded that the Debtor abused the bankruptcy process, citing *Rasmussen*. In that case, the debtor was originally unable to meet the jurisdictional

---

**3.** These requirements are that the debtor pledge all his disposable income to repayment for at least three years, and that his unsecured creditors receive at least as much under Chapter 13 as they would under Chapter 7.

**4.** The factors are:
"(1) the amount of the proposed payments and the amount of the debtor's surplus;
(2) the debtor's employment history, ability to earn and likelihood of future increases in income;
(3) the probable or expected duration of the plan;
(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;
(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee."
*Flygare*, 709 F.2d at 1347–48 (quoting *United States v. Estus (In re Estus)*, 695 F.2d 311, 317 (8th Cir.1982)).

limits of a Chapter 13 proceeding because his unsecured debt exceeded the statutory limit. The debtor discharged all of his unsecured debt save one through a Chapter 7 proceeding; the surviving unsecured debt was deemed nondischargeable pursuant to § 523(a)(2), because he provided fraudulent information to obtain a loan. The debtor filed his Chapter 13 proceedings twelve days after the conclusion of his Chapter 7 proceedings, proposing a plan which payed less than 1.5% of the unsecured debt. The Tenth Circuit concluded the Chapter 13 filing was a manipulation of the bankruptcy system. The debtor sought to discharge a single debt for de minimis payments under a Chapter 13 plan, a debt that was ruled not dischargeable under an immediately previous Chapter 7 filing, when the debtor could not meet the jurisdictional requirements of Chapter 13. *Rasmussen*, 888 F.2d at 706.

■ The Debtor stresses that the use of serial filings in an attempt to discharge a debt under Chapter 13 that is not dischargeable under Chapter 7 is not, by itself, conclusive evidence of bad faith. We agree. However, in this case, as in *Rasmussen*, the record reflects that more factors than merely the fact of successive filings are involved.

■ In the prior case, the Debtor was unable to meet the jurisdictional limits of a Chapter 13 proceeding because his unsecured debts totaled more than $250,000, in contravention of § 109(e).[5] The Debtor proceeded to discharge all his unsecured debts, except that of American Jawa, through his Chapter 7 proceedings. During the course of that proceeding, the bankruptcy court disallowed discharge of his debts to American Jawa and the Bank, pursuant to § 523(a)(4) and (6), because he sold inventory out of trust and failed to

account for the proceeds. Six months after receiving his discharge in the Chapter 7 proceedings, the Debtor initiated a proceeding under Chapter 13, listing the debts surviving the Chapter 7 as his only obligations and his debt to American Jawa as his only unsecured debt. His Plan proposed to pay $775.00 per month for 60 months—a payback to American Jawa of 0.4% of its unsecured claim, because he was paying the priority tax claims of the IRS and the Oklahoma Tax Commission that were not discharged in his prior Chapter 7. The Debtor further proposed to surrender to the Bank non-exempt property that remained an asset of his Chapter 7 estate. Rather than a good faith effort to repay this debt, we see a manipulation of the system by a debtor who defaulted on obligations grounded in dishonesty, and who subsequently sought to avoid these nondischargeable debts at minimal cost. After reviewing the entire record and the bankruptcy court's findings, we cannot say that the court was clearly erroneous in finding the Debtor filed his Plan in bad faith.

■ The Debtor further argues that it was improper for the bankruptcy court to dismiss the petition altogether, contending the court did not apply the totality of the circumstances test in dismissing the petition for bad faith. Section 1307(c) provides the bankruptcy court may dismiss a case "for cause." It is well established that lack of good faith in commencing a case is "cause" for dismissal of a Chapter 13 case. *In re Love*, 957 F.2d at 1354. In determining whether a Chapter 13 petition has been filed in bad faith under § 1307(c), the bankruptcy court must consider the totality of the circumstances. *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993).[6] Although rejection of a Chapter 13

---

**5.** The Debtor argues that *Rasmussen* can be distinguished because there was no finding by the bankruptcy court that he could not have originally filed a Chapter 13 because of jurisdictional problems. The record shows, however, that the Debtor's Chapter 7 schedules

list unsecured debt in excess of $750,000.00, far above the limitation set forth in § 109(e).

**6.** Factors relevant to a § 1307(c) bad faith inquiry include:

plan should not necessarily lead to dismissal, it is a factor for the bankruptcy court to consider as it determines whether to dismiss the petition. *Id.*

■ We are not convinced that the bankruptcy court dismissed the petition solely for lack of good faith. None of the objecting parties moved for dismissal of the Debtor's petition. The court did not specifically use the words "bad faith" in its order dismissing the case. Rather, the court found that the Debtor had no more disposable income to fund the Plan and therefore, could not propose a greater payback to unsecured creditors, thus precluding a feasible amendment to the Plan. The court also found that since the Debtor had received a discharge within the last six years, thus precluding conversion to Chapter 7, the case would be dismissed. These findings alone are sufficient grounds for dismissal for "cause." Bolstered by the court's finding that the Debtor proposed his Plan in bad faith, these findings support the court's decision to dismiss and we will not overturn this finding as an abuse of discretion or as clearly erroneous.

Finally, the Debtor argues that the bankruptcy court erred in allowing the Chapter 7 Trustee to object to his Plan because the Trustee was not a "party in interest." The Trustee's objection to confirmation involved issues relative to the pending Chapter 7 adversary proceeding. The Debtor contends that in order to be a party in interest, one must be the holder of an allowed claim. This argument is without merit.

■ Section 1324 provides that "[a] party in interest may object to confirmation of the plan." The Code does not define the phrase "party in interest." While some courts have interpreted the phrase to exclude a Chapter 13 creditor who did not hold an allowed claim,[7] we do not agree with the Debtor's extrapolation that a party in interest is limited solely to creditors. Section 1109(b), although not applicable in Chapter 13, provides guidance in determining who is a party in interest.[8] The phrase is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings. *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir.1995) (citation omitted). We extend this definition to include anyone who has an interest in the property to be administered and distributed under the Chapter 13 plan. The Chapter 7 Trustee questioned whether the Debtor's Plan proposed to surrender non-homestead property which was part of the Chapter 7 estate, and the impact of the pending adversary proceeding seeking revocation of the Debtor's discharge. The Trustee clearly had an interest in any non-homestead property the Plan proposed to surrender and thus was a party in interest with standing to object to

---

"the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."

*Gier, Id.*, 986 F.2d at 1329 (quoting *Love*, 957 F.2d at 1357).

7. *See In re Stewart*, 46 B.R. 73, 77 (Bankr. D.Or.1985) (holding that because creditor failed to timely file formal proof of claim, he was not a party in interest and had no stand-

ing to object to confirmation of Chapter 13 debtor's plan). *Cf. In re Turpen*, 218 B.R. 908, 911 (Bankr.N.D.Iowa 1998) (holding when confirmation hearing is held prior to claims deadline, party need not even have filed a proof of claim in order to be a "party in interest," with standing to object to confirmation of proposed Chapter 13 plan).

8. Section 1109(b) provides:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

the Plan, and we will not overturn the court's order on this ground.[9]

## V. Conclusion.

For the reasons set forth above, the bankruptcy court's order is AFFIRMED.

---

9. Further, it does not appear that the bankruptcy court based its decision denying confirmation and dismissal on the grounds raised by the Trustee. Even if the Trustee were not a party in interest, there were other objectors to the Plan who raised the issue of bad faith, and allowing the objection would constitute harmless error.