**In re Holli LUNDAHL, Debtor.**

**No. 03–21660.**

United States Bankruptcy Court,
D. Utah,
Central Division.

Dec. 24, 2003.

Holli Lundahl, pro se.

## AMENDED ORDER DISMISSING CASE

WILLIAM T. THURMAN, Bankruptcy Judge.

This matter is before the Court on Eli Lilly's[1] Objection to Chapter 13 Plan, Motion to Convert Chapter 13 Case to Chapter 7 Case or, in the Alternative, for Dismissal of Case and in consideration of confirmation of Debtor's plan. A response to the objection was filed by the Debtor, Holli Lundahl ("Debtor"). A confirmation hearing was conducted on September 16, 2003, but determination of confirmation was continued until October 28, 2003, at which time an evidentiary hearing on confirmation, dismissal, and conversion was conducted. That hearing was further continued to November 3, 2003, and was concluded on December 11, 2003. Michael R. Johnson, Don Ridge, and David H. Leigh appeared at the hearings on behalf of Eli Lilly ("Lilly") and Advanced Cardiovascular Systems, Inc. ("ACS"). William Marks appeared on behalf of Los Angeles Homeowner's Aid, Inc. ("LAHA"). Craig Schneider appeared as Special Assistant United States Attorney for the IRS. Rachelle Ehlert appeared for the Chapter 13 Trustee, Andres Diaz. Ralph Petty appeared for Marlene Telford. Holli Lundahl appeared on her own behalf, pro se. Evidence was received at the hearings and argument had thereon. Based on the same, the Court enters this Order, which will constitute the Court's Findings and Conclusions.

### JURISDICTION AND VENUE

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. § 1334(b) and § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2), and as such the Court has authority to enter a final order. Venue is proper in the Central Division of the District of Utah under 28 U.S.C. § 1409.

### FACTS

The Debtor filed a voluntary petition in the above captioned Chapter 13 case ("Current Case") on January 31, 2003. The Debtor had previously filed a Chapter 13 case[2] on June 11, 2002, which was dismissed by order of the Court on August 30, 2002. There has been no consolidation of these two cases. The petition in the Current Case lists the Debtor's address as a post office box number. Upon examination at the hearings on the current motion, the Debtor refused to give her street address.

The Debtor filed her Statement of Financial Affairs and Schedules ("Statements and Schedules") in the Current Case[3] on January 31, 2003. Schedule I reflects that the Debtor's sole source of income is from a disability stipend in the amount of $350 per month.[4] The Debtor's second Amend-

---

1. This motion was joined by Los Angeles Homeowner's Aid, Inc. on September 12, 2003, by Advanced Cardiovascular Systems, Inc. on October 7, 2003, and by the IRS on October 24, 2003.

2. Case number 02–29586 ("First Case").

3. Unless otherwise noted, all other references shall be to the Current Case.

4. Debtor's testimony at a hearing in a related adversary proceeding, case number 03–2257,

held on September 11, 2003, verified this amount. However, Schedule I as originally filed also reflects $1,643 as total monthly income. The Debtor testified on October 28, 2003 that she copied her schedule from an unrelated debtor's Schedule I and hers was incorrect because she had neglected to "white out" all of the other debtor's income information. The Debtor also testified that she is receiving food stamps of $80 per month, which is reflected on Debtor's second Amended Schedule J, filed September 17, 2003.

ed Schedule J shows expenses totaling $300 per month.

Schedules A and B disclose that the Debtor owns no real property and that she has $2,300 in miscellaneous items of personal property.[5] The debts scheduled by the Debtor consist of the following: Schedule D (Secured Claims): $0; Schedule E (Unsecured Priority Claims): $500[6]; Schedule F (Unsecured Non-priority Claims): $120,150.[7] Eli Lilly, ACS, and LAHA were not scheduled as creditors by the Debtor on any schedule or mailing matrix. Likewise, none of the three aforesaid parties filed timely proofs of claims in this bankruptcy case.[8] As of December 11, 2003, the date of the continued confirmation hearing, the total amount of claims set forth on the claims register as claims that are most likely allowable against the Debtor by all creditors was $0. As such, the only claims in this Chapter 13 case are the administrative claims of the Chapter 13 Trustee.

The Debtor specified the IRS as a disputed creditor on Schedule F, but listed its address simply as "Ogden, Utah." No zip code was included on the schedule or matrix. Rule 2002–1(j) of the Local Rules of Practice requires that all Debtors schedule the IRS at its Salt Lake City, Utah Special Procedures street address. An IRS representative attended the meeting of creditors (the "341 Meeting") because the Chapter 13 Trustee had forwarded the Debtor's name and all others that were likewise set for the same 341 Meeting to the IRS prior to the meeting. The IRS conducted a cross check on the name and social security number of the Debtor and determined that the Debtor owed taxes for 1990. The IRS would not have known about the 341 Meeting without the notice from the Chapter 13 Trustee. According to the IRS representative who testified at the October 28, 2003 hearing, the IRS was prepared to file a proof of claim in May, 2003, before its bar date expired. When the IRS checked the Court's records, in accordance with normal IRS practice, it discovered that the Debtor's case had been dismissed on May 8, 2003. Subsequently, the Debtor filed a motion to vacate the dismissal without notice to the IRS. The motion was granted and the Bankruptcy Noticing Center sent notice of that order to all creditors listed on the Debtor's matrix, which included the IRS at "Ogden, Utah," without a zip code. The IRS did not check the Court records

---

**5.** Debtor's Amended Schedule B, dated September 17, 2003, references contingent and unliquidated claims against third parties, but does not list the value of such claims. The Amended Schedule B does, however, identify $233,849 in set-off claims. These claims are listed as: $150 against Hidden Vale Management ("Hidden Vale"), the Debtor's landlord; $50,000 in a "void" default judgment as to Eli Lilly, $120,000 in a "void" IRS tax lien; $56,000 in a note and trust deed to LAHA; $199 to Four Aces Mobile Home Park; $2,500 in "void" educational liens; and $5,000 in uncashed mortgage payments to Source One Mortgage Services.

**6.** All of which is a "disputed" claim by Hidden Vale. The Court takes judicial notice of the fact that Hidden Vale Management has not filed a proof of claim in this case.

**7.** $120,000 of which is a purported claim by the IRS. Further, the claim was scheduled as "disputed."

**8.** On February 24, 2003, the Utah Sate Tax Commission ("USTC") filed a proof of claim for $600 owed as a general unsecured claim and $4,000 owed as a priority claim. The USTC amended its proof of claim on March 13, 2003, to reflect the total amount owed to be $0. ACS filed a proof of claim for $58,019.76 on October 23, 2003 and the IRS filed a proof of claim for $87,234.69 on November 3, 2003, both of which are after the claims bar date and which therefore may not be considered under the Tenth Circuit Court of Appeals case of *Jones v. Arross*, 9 F.3d 79 (10th Cir.1993).

after May, 2003 inasmuch as it did not receive notice from any party that the Debtor's case had been reinstated. It asserts a claim of approximately $69,056.06, based on a proof of claim filed in Debtor's First Case.[9]

On September 17, 2003, the Debtor filed an amended Schedule B, which states: "SET OFF OR INVALID CLAIMS" and then lists $150 against Hiddenvale Mgt., $50,000 as a void judgment as to Eli Lilly & Company,[10] $120,000 in a void IRS tax lien, $56,000 in a note and trust deed to Los Angeles Homeowners Aid,[11] $199 to Four Aces Mobile Home Park, $2,500 in void educational liens and $5,000 in uncashed mortgage payments to Source One Mortgage Services Corp/Empire of America Realty Credit Corp. The Debtor testified on October 28, 2003 that but for her set off claims, she would owe these creditors money.

The Debtor filed her Chapter 13 Plan on March 14, 2003.[12] The Debtor's Plan provides for payment to the Chapter 13 Trustee of $50.00 per month.[13] The Debtor is current with her payments of $50.00 per month as of December 11, 2003.

The Debtor has filed the following twelve adversary proceedings in connection with this case:

1. Adversary Proceeding # 03–02185: *Lundahl et al. v. Eli Lilly and Company, Inc. et al.*

2. Adversary Proceeding # 03–02257: *Lundahl v. Jackson et al.* ("State Judges Proceeding")[14]

3. Adversary Proceeding # 03–02278: *Lundahl v. Los Angeles Homeowners Aid, Inc. et al.* ("LAHA Proceeding")[15]

4. Adversary Proceeding # 03–02299: *Lundahl v. Lewis et al.*

5. Adversary Proceeding # 3–02317: *Lundahl et al. v. NAR, Inc. et al.*

6. Adversary Proceeding # 03–02336: *Lundahl v. CNA Financial Corporation et al.*

7. Adversary Proceeding # 03–02351: *Lundahl v. Paul Eves et al.*

8. Adversary Proceeding # 03–02401: *Lundahl v. Robbins et al.*[16]

9. Adversary Proceeding # 03–02402: *Lundahl v. Murdock*

9. See Creditor's Exhibit 11, received at the hearing on confirmation.

10. Creditor's Exhibit 4 received in this matter reflects a default judgment in favor of ACS against the Debtor dated October 6, 1998 in the amount of $48,179.28. No evidence has been presented as to this obligation being satisfied.

11. On Schedule D in the Debtor's First Case (Exhibit 9 received in this matter), the Debtor lists Los Angeles Homeowners Aid, Inc. as a creditor as "Mortgagee on 1st Trust Deed" with the amount of $55,250. There has been no explanation as to any changed circumstances between the filing of the First Case and the Current Case that would result in omitting this creditor on the schedules of the Current Case.

12. The Debtor informed the Court at the September 11, 2003 hearing that she does not expect any increase in income during the life expectancy of her Plan.

13. The Debtor's original Plan provided for payment of $5 per month. Her first Amended Schedule J, filed March 14, 2003, allowed for $64 per month. Her second Amended Schedule J, filed on September 17, 2003, proposes $50 payments which is consistent with her Amended Plan filed June 19, 2003.

14. The Defendants have filed a motion to dismiss which is under advisement by this Court.

15. This is a removed proceeding from state court.

16. This is a removed proceeding from federal court.

10. Adversary Proceeding # 03–02403: *Lundahl v. Fireman's Fund Insurance Company et al.*[17]

11. Adversary Proceeding # 03–02404: *Lundahl v. CNA Insurance Company et al.*[18]

12. Adversary Proceeding # 03–02529: *Lundahl v. Christine Durham, Michael Wilkens, Matthew Durant* ("Supreme Court Judges Law Suit").

The Debtor also has been very active in other state and federal district court litigation. From the evidence presented, the Court notes that the Debtor has submitted no fewer than 27 filings in state or federal court since 1999.[19] The Debtor has been a Defendant in state court litigation involving the Defendants in the State Judges Proceeding, and likewise has been a Defendant in the LAHA Proceeding.

### STANDING

█ The Debtor argued at the confirmation hearing that Lilly, ACS, and LAHA all lack standing to object to her plan and that they do not have standing to move to dismiss or convert her Chapter 13 case. The Debtor has filed and/or removed litigation involving these parties to this Court as adversary proceedings.[20] The Debtor claims that the state court judgment and claims against her in both the ACS and LAHA cases are void. These are serious allegations. The Debtor requests that the Court make factual and legal determinations as to these parties' underlying claims in connection with her confirmation hearing, and overrule their objections and deny the motion to dismiss or convert on the basis that these parties have no claims and therefore have no standing.

As a preliminary matter, the argument of the Debtor is troublesome to the Court. The Court notes that the Debtor did not list any of these parties as creditors on Schedules D, E, or F, though she asserts that she has set-off claims against Eli Lilly and LAHA in her Amended Schedule B.[21] As a direct result of not listing these parties as creditors, they did not receive notice of the bankruptcy in time to file a proof of claim, if one exists. The Debtor, however, claims that because the parties did not file timely proofs of claims, they do not have standing.

█ Section 1307(c) of the Bankruptcy Code is helpful in this analysis. That section states:

17. This is a removed proceeding from state court.

18. This is a removed proceeding from state court.

19. The Supreme Court of Utah recited the following:

Since 1999, Holli Lundahl has submitted no fewer than twenty-seven filings, consisting of nineteen appeals, four petitions for extraordinary writ (including the instant petition), two petitions for writ of certiorari, and two petitions for interlocutory appeal. Of these, five appeals are presently pending before either this court or the court of appeals, two decisions on appeal were summarily affirmed, one decision on appeal has been affirmed per curiam, four appeals were dismissed for lack of jurisdiction (including Holli's attempt to appeal a criminal case where the lower court had dismissed the charges against her), two appeals were dismissed as premature, one appeal was dismissed for an improper rule 54(b) certification, and one appeal was voluntarily dismissed. Three petitions for extraordinary writ, two petitions for writ of certiorari, and two petitions for interlocutory appeal have been denied.

*Lundahl v. Quinn,* 67 P.3d 1000, 1001 (Utah 2003).

20. Listed as adversary proceeding numbers 1 and 3 on page 238, *supra.*

21. Filed on September 17, 2003, almost 8 months after the date of her petition, and after the claims bar date of June 5, 2003.

Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

Section 1307(c) specifically states that any "party in interest" may make a request to convert or dismiss. The statute further gives the Court discretion in granting either such motion, "whichever is in the best interests of creditors and the estate." It appears that the Debtor is arguing that because "creditors" are mentioned in the last quoted phrase, only parties with allowed claims may be heard. The Court disagrees with this analysis. The plain meaning of § 1307(c) clearly gives the Court discretion to discern what is in the best interest of creditors. It does not limit standing solely to creditors.

A party in interest is not specifically defined in the Bankruptcy Code.[22] Section 1109(b), however, is instructive.[23] It provides that

A party in interest, *including* the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The word "including" is not limiting. Case law from the Tenth Circuit Bankruptcy Appellate Panel also is helpful in determining this issue of standing. *In re Davis*[24] provides that standing to be heard refers to a person or entity that is or may be financially impacted by a Debtor's case. That court held that "While some courts have interpreted the phrase [party in interest] to exclude a Chapter 13 creditor

---

**22.** Title 11, United States Code.

**23.** The Court notes that this section is placed in Chapter 11, and that no similar provision exists in Chapter 13.

**24.** *In re Davis,* 239 B.R. 573 (10th Cir. BAP 1999).

who did not hold an allowed claim, we do not agree with the Debtor's extrapolation that a party in interest is limited solely to creditors.... The phrase is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."[25]

In the Current Case, both Lilly and ACS, as well as LAHA, have the potential of being substantially financially impacted, given the adversary proceedings filed against them. Based on the reasoning in the *Davis* case from our circuit, Lilly, ACS, and LAHA all have standing to appear and argue in this case. Their motions and objections therefore will be addressed. It is unnecessary for the Court to rule on the validity of the parties' claims in the Debtor's adversary proceedings because the merit of those claims are irrelevant to the confirmation issues of the Debtor's plan and to the possible dismissal or conversion of her case.

## *ANALYSIS*

### A. APPLICABILITY OF UTAH SUPREME COURT RULING

■ During the course of this hearing, Lilly introduced Exhibit 55, which is a copy of the Utah Supreme Court ruling, dated April 1, 2003. It bears on the Debtor's motives and good faith. The Debtor objected to the Court receiving this document. The Court has ruled on this in its order dated December 8, 2003, in which the Court received the exhibit. The Court elects to treat that issue here, also.[26] The Debtor argues that the ruling of the Supreme Court of Utah in the matter of *Lundahl v. Quinn et al.*, cited above, is void because it was rendered post-petition. The Court disagrees with this argument on several bases. A close analysis of that

matter is required. From the facts cited in that reported decision, the Debtor sought leave of court in the Third District Court of Utah ("District Court") to intervene and file an amended counterclaim in a suit originally commenced against the Debtor's sister. The Debtor alleged she received an assignment of rights of her sister against the plaintiffs. The District Court denied the motion to intervene and the Debtor sought an extraordinary writ from the Utah Supreme Court to direct the District Court to allow the intervention. The Utah Supreme Court denied the motion and rendered its decision on April 1, 2003.

With that background, this Court determines that the automatic stay did not prevent the Utah Supreme Court from making its ruling. Several reasons support this contention. First, the matter before the Utah Supreme Court was a motion by the Debtor for an extraordinary writ. It was not a matter seeking claims against the Debtor. Second, the ruling was not a decision that resulted in a judgment, fine, or other penalty against the Debtor. Although the decision of the Utah Supreme Court made reference to possible sanctions for a frivolous action on the part of the Debtor, there was no imposition of sanctions. It was a denial of her motion for the writ. Section 362(a) provides that the filing of a petition in bankruptcy acts as a stay against:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose be-

---

**25.** *Id.* at 579.

**26.** *See infra* n. 29.

fore the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

This Court reads section 362(a) by its plain meaning and concludes that nothing in this statute stayed the Utah Supreme Court from denying the writ sought by the Debtor following her voluntary filing of a Chapter 13 petition, or from making its ruling on April 1, 2003. The ruling of the Tenth Circuit Court of Appeals ("Tenth Circuit") in the case of *Ellis v. Consolidated Diesel Elec. Corp.*[27] is instructive. That court determined that actions taken *against* the Debtor post-petition are void.[28] Here, no act as defined under section 362(a) was taken against the Debtor. As a consequence, under the facts of this case, the Debtor may not claim that the Utah Supreme Court's order should be void ab initio. Accordingly, the decision of the Utah Supreme Court is not void, did not violate the stay under section 362(a), and this Court will consider it in the current decision.[29]

Of additional concern to the Court are the allegations by Lilly that the Debtor has filed a forgery as an exhibit with this Court, attached to the Debtor's Motion for Summary Dismissal of Petition for Extraordinary Writ ("Debtor's Motion for Dismissal"). The Debtor claims that document was filed with the Utah Supreme Court on March 28, 2003 in an attempt to dismiss her petition for extraordinary writ. She also claims the Motion puts the Utah Supreme Court on notice of her bankruptcy. Lilly has filed a certified copy of the docket sheet from the Utah Supreme Court with this Court, identified as Exhibit B in Lilly's Response filed on November 26, 2003 in this matter. It reflects no such motion as being filed with the Supreme Court. Lilly asserts that the Debtor is perpetrating a fraud on this Court by attaching such a document to papers filed in this Court. In effect, Lilly argues that the Debtor has falsified a document to support her arguments. The Debtor disputes the allegations of Lilly. Based on the evidence before this Court, the Court finds there was no such motion filed with the Utah Supreme Court. The Court finds that this evidence goes to the credibility of the

---

**27.** *See Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371 (10th Cir.1990). *See also Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301 (10th Cir.2000).

**28.** *Id.* at 372.

**29.** The Court also notes that this Court ruled at a hearing on December 2, 2003 that the stay did not apply. Subsequently, a written order was prepared and filed memorializing that ruling, dated December 8, 2003.

Debtor and her motivations in the Current Case.

Additional issues regarding credibility of the Debtor have been raised by Lilly. Lilly attempted to introduce its Exhibit 2, which was a non-certified copy of a Proposed Decision and Order dated October 6, 1995 issued from the Board of Chiropractic Examiners, State of California ("Board") in a matter entitled, "In the Matter of the Accusation and First Supplemental Accusation Against Holli Telford Lundahl, No 1994–23 OAH No. L–9505197" (the "Board Proceeding"). Lilly offered that exhibit claiming it went to the credibility of the Debtor's testimony and her character. The Court did not receive that exhibit due to the objection of the Debtor. However, on December 11, 2003 at the final day of the hearings on these motions, the Debtor offered Debtor's Exhibit 66, which was received. This is the identical exhibit that the Court refused to receive as Lilly's Exhibit 2. There were no reservations as to the Court's receipt of Exhibit 66. In that exhibit, the Board made certain findings as to the Debtor's conduct and character that were not complimentary to her. The Board ruled "Respondent [the Debtor] should not hold a license to practice chiropractic because she lacks the requisite good moral character required of a licensed chiropractor." Although received, because of the age of the ruling of the Board, it bears minimally on Debtor's credibility in this case but does raise concerns. It is odd that while the Debtor fought vigorously to keep Exhibit 2 out, she voluntarily offered Exhibit 66.

## B. THE DEBTOR HAS NOT MET THE GOOD FAITH REQUIREMENTS OF CHAPTER 13

■ A Chapter 13 Plan may only be confirmed if it is proposed in good faith.[30] Neither the Bankruptcy Code itself nor its legislative history defines the term "good faith." [31] The Tenth Circuit Court of Appeals has rejected a per se bad faith standard, holding instead that bad faith is to be judged by the totality of the circumstances on a case by case basis.[32] In *Flygare*, the court found that the proper inquiry is whether the plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13.[33] The stated legislative purpose of Chapter 13 was to achieve broad, extensive, and unqualified discharge of debts for a working debtor.[34] In addition, the *Flygare* Court set forth eleven factors to be considered, among other relevant circumstances, in determining whether the Chapter 13 plan was filed in good faith. These factors include:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

---

**30.** 11 U.S.C. § 1325(a)(3).

**31.** *In re Rasmussen*, 888 F.2d 703, 704 (10th Cir.1989).

**32.** *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983); *In re Gier*, 986 F.2d 1326 (10th Cir.1993).

**33.** *Flygare*, 709 F.2d at 1347.

**34.** *In re Rasmussen*, 888 F.2d at 705 (10th Cir.1989).

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the Trustee.[35]

The Court notes that lack of good faith should not be construed as a determination by this Court of malicious intent, malevolence, or nefarious scheming.[36] Good faith is measured by an objective, as opposed to a subjective, standard.[37]

■ There are four basic issues that bear on whether the Debtor's plan has been filed in good faith under the *Flygare* and *Gier* standards. 1) Has the plan been proposed in good faith where there are questions regarding the Debtor's income and expenses? 2) Has the plan been proposed in good faith where there are no debts and no creditors to be paid through the plan? 3) Has the plan been proposed in good faith where the primary reason for filing the bankruptcy case was to find a forum to litigate previously litigated state and federal court actions? 4) Has the plan been proposed in good faith where there are serious questions as to the accuracy of the papers filed with the Court?

## 1. INCOME AND EXPENSES

■ The ruling in *Flygare* identifies the payments to be made under the plan and any surplus that might be available to pay creditors as an important factor in determining whether the plan was filed in good faith. This factor overlaps with the requirement that the plan must be feasible to be confirmed.[38] The Debtor must have realistic expenses and a steady source of income. The Court notes that the Debtor's sole source of income, a disability stipend in the amount of $350 per month, meets the statutory requirement for "regular income." [39] The Court also notes and finds that the Debtor's budget is extremely meager. The Debtor has no cushion for emergencies.[40] The current plan proposes

35. *Flygare*, 709 F.2d at 1347–48, *cited with approval in In re Young*, 237 F.3d 1168, 1174–75 (10th Cir.2001).

36. *See In re M & L Business Mach. Co.*, 84 F.3d 1330, 1341 (10th Cir.1996).

37. *Id.*

38. The Bankruptcy Code mandates the finding of feasibility in 11 U.S.C. § 1325(a)(6).

39. Under the terms of 11 U.S.C. § 109(e), only an "individual with regular income" is eligible to file a petition under Chapter 13 of the Bankruptcy Code. This phrase is defined in 11 U.S.C. § 101(30) as an individual "whose income is sufficiently stable and regular to enable such individual to make payments under a [Chapter 13] plan ...." Certain non-traditional income sources can qualify as sufficiently stable and regular to support Chapter 13 debtors. Legislative history and case law amply support the proposition that "individuals on welfare, social security, fixed pension income, or who live on investment incomes" may qualify for Chapter 13. *In re Hickman*, 104 B.R. 374, 377 (Bankr.D.Colo.1989).

40. A cushion of money is necessary in Chapter 13 budgeting to guard against life's unexpectancies. It is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan. Indeed, such a cushion may be required for compliance with section 1325(a)(6), which requires confirmation of a plan if, inter alia, "the debtor will be able to make all payments under the

$50 per month to be paid to the Trustee. The Debtor has provided no money in her budget for water, telephone, clothing, laundry, medical [41] and dental expenses, recreation, or taxes. In addition, her other expenses are very low, and have fluctuated greatly since her initial filing. For example, the Debtor's rent went from $64 to $100,[42] electricity decreased from $65 to $20, and she has provided that total monthly expenses have dropped from $434 to $300, a 30% reduction without adequate explanation.[43] Accordingly, even without any claims to pay, the Court finds and concludes that the Debtor lacks the ability to fund a Chapter 13 plan with payments of $50 per month. Therefore the plan is not feasible and fails to meet the requirements of § 1325(a)(6). This conclusion is augmented if there are, in fact, any claims to pay.

In analyzing the Debtor's proposed payment under the *Flygare* standard, the Court finds that the amount of the proposed payment of $50,00 is much more than the Debtor's net disposable income. When viewed with the totality of all other facts in this case, the Court finds that a payment of $50 per month was meant by the Debtor as a mechanism of appearing to qualify for Chapter 13 relief only. Her expenses on a monthly basis will most likely exceed those listed on Schedule J, leaving nothing to pay under a Chapter 13 plan. Consequently, the Court finds that under this factor, the plan has not been proposed in good faith.

## 2. NO DEBTS AND NO CREDITORS

As set forth above, there are no creditors' claims to be paid through the Chapter 13 plan. The Court concludes that standing alone, the fact that there are no claims to be paid through the Chapter 13 plan is not sufficient to conclude that the case or the plan have not been filed in good faith. It is common for creditors' claims, which are eventually allowed, to be different from that listed on the Debtor's Schedules. However, there are other factors that, when coupled with the fact that there are no claims to be paid, leads the Court to conclude that the plan was not filed in good faith. In addition, with no allowed claims to be paid in this Chapter 13 case, the expected duration of the plan will be one month or less, with only the Chapter 13 Trustee receiving an administrative claim payment. Accordingly, this factor too cuts against the Debtor's burden of showing that the plan was proposed in good faith.

## 3. MOTIVATION IN FILING CHAPTER 13

The Debtor's statement at the initial confirmation hearing bears heavily on the issue of good faith. At a hearing in an associated adversary proceeding, held on September 11, 2003, the Debtor stated, "It was pretty clear to me I wasn't going to get any relief in the state court probably because I sued a judge.... And so the Bankruptcy Court was my only forum to

---

plan ...." *In re Greer*, 60 B.R. 547, 553 (Bankr.C.D.Cal.1986) *citing In re Otero*, 48 B.R. 704, 708 (Bankr.E.D.Va.1985).

**41.** The Court finds this lack of medical expenses questionable, especially in light of the Debtor's testimony that she is vision impaired and required magnifying devises to read documents presented to her at the hearings.

**42.** The Debtor testified that she had moved, but refused to give the new address while testifying.

**43.** *See* Debtor's Statement of Financial Affairs, filed January 31, 2003; Debtor's first Amended Schedule J, filed March 14, 2003; and Debtor's second Amended Schedule J, filed September 17, 2003.

get this case ever adjudicated." [44] Again, in the Debtor's pleading filed with this Court dated on October 22, 2003, the Debtor included a copy of her notice to the state court as "Exhibit H," which stated: "Due to profound obstruction of LUNDAHL'S due process rights to litigate her causes of action to final judgment and thereby obtain monetary relief against LILLY and others, in January of 2003, LUNDAHL filed bankruptcy in her home state of Utah . . . ." This suggests to the Court that the Debtor had other motivation in filing her bankruptcy case. The Debtor has filed multiple adversary proceedings and has removed other proceedings to this Court. [45] The *Flygare* factor of considering the Debtor's motivation in filing the case is clearly applicable.

Utilizing the bankruptcy system solely to gain a forum for state or federal proceedings flies in the face of the spirit of the Bankruptcy Code. [46] In a similar case from Pennsylvania, the district court noted that

> while contentions have been made that defendants were not being treated fairly in State Court, Congress did not create the bankruptcy courts to remedy such situations or to provide an alternative forum when such contentions are raised. It is obvious that Debtors did not need to file bankruptcy because of financial

concerns. Their filings appear to be a vehicle which defendants and their attorneys utilized to get the [litigation] out of State Court. [47]

Finally, at the hearing held on December 11, 2003 the Debtor testified that one of the reasons she filed bankruptcy was to take advantage of the automatic stay because she could not afford a bond on appeal for several of her lawsuits that were pending. Filing for bankruptcy should not be used as an alternative for a supersedeas bond. [48]

The Debtor's manner of listing creditors also bears on her motivation in filing this case. It appears that the Debtor has intentionally not listed or improperly scheduled disputed creditors. [49] As a result, inadequate or no notice was sent to these potential creditors so that they could have meaningful participation in the case. It is inconsistent for the Debtor to initiate adversary proceedings against creditors while neglecting to inform them of her initial filing.

The Court determines that the Debtor's primary motivation in filing this Chapter 13 case was to provide a forum for the Debtor in the form of adversary proceedings. In addition, the Court determines that many of the issues presented in the adversary proceedings have been resolved previously by other courts where the Debt-

---

44. *See* transcript p. 25.

45. *See infra* page 238.

46. The purpose of the Bankruptcy Code is to allow debtors a financial "fresh start." *See Dalton v. IRS*, 77 F.3d 1297, 1300 (1996), citing *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

47. *In re Argus Group 1700, Inc.*, 206 B.R. 737, 756 (Bankr.E.D.Pa.1996). *See also In re Heritage Wood 'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr.M.D.Fla.1987) (bankruptcy case dismissed where forum shopping had oc-

curred; court noted that "Debtor, for reasons best known to itself and perhaps the strategy of counsel, determined that it was not going to get the best side of the coin in the state court and looked to go elsewhere to have a new bite at the apple.").

48. *See In re Little Creek Development Co.*, 54 B.R. 510 (Bankr.N.D.Tex.1985); *In re Roberts*, 117 B.R. 677 (Bankr.N.D.Okl.1990); *In re Wally Findlay Galleries*, 36 B.R. 849 (Bankr.S.D.N.Y.1984).

49. *See* discussion under "Accuracy of Statement of Affairs and Schedules," *infra* p. 247.

or is a party. Providing a forum for already decided issues is not an appropriate use of filing for Chapter 13 relief.

## 4. ACCURACY OF STATEMENT OF AFFAIRS AND SCHEDULES

The Court is concerned about the accuracy of the Debtor's Statement of Financial Affairs and Schedules. Some of these concerns are identified above under the Facts section. Some require additional analysis. For example, in the Debtor's answer to Question 4.a. on her original Statement of Financial Affairs, which asks for all lawsuits to which the Debtor is or was a party within one year prior to filing of the bankruptcy, the Debtor inserted the word "pertinent" prior to the word lawsuits and then answered the question: "None within the last year." This raises concern with the Court, especially noting that the Debtor has removed proceedings to this Court and has filed other papers indicating that the Debtor was a party to proceedings. It is not the Debtor's prerogative to change the question and then answer it. At a minimum, the response of the Debtor is ambiguous and leaves the reader with more questions than answers.

The Debtor subsequently amended her answer to Question 4.a. on April 10, 2003 to reflect ten law suits. These lawsuits appear to have been pending for some time prior to Debtor's case being filed. The Debtor has not provided an adequate explanation as to why she did not include those on her initial Statement of Financial Affairs.

With respect to Schedule F, the Debtor checked the box indicating she had no unsecured creditors. However, the Debtor also listed a claim by H.R. Medical Clinic for $150 and by the IRS for $120,000.[50] Further, as mentioned above, the Debtor acknowledged at the November 3, 2003 and December 11, 2003 hearings that she had approximately $40,000 in prepetition medical bills that she had not scheduled. These inconsistent responses, which the Debtor signed under penalty of perjury, are ambiguous and add uncertainty as to the Debtor's financial status.

The amendment filed September 17, 2003, coupled with the Debtor's testimony on October 28, 2003, add additional ambiguity and uncertainty to the Debtor's financial condition. The amendment lists "SET OFF OR INVALID CLAIMS" as assets on Schedule B. However, the Debtor testified on October 28, 2003 that but for these alleged set off claims, she would owe the amounts stated on the amendments to these parties. These parties, with the exception of Hidden Vale, are not listed as creditors or noted on the mailing matrix.[51]

The Debtor further testified on October 28, 2003, and again on November 3, 2003, that because she held set off claims far in excess of that which was owed to these parties, she did not consider them creditors and, accordingly, with the exception of Hidden Vale and the IRS, did not list them on Schedules D, E, or F.[52] Form 6 of the

---

**50.** The Debtor wrote "claim disputed subject to adversary proceeding" next to the IRS' claim.

**51.** Hidden Vale filed a motion for relief from stay that was granted, and did not file a proof of claim.

**52.** The Debtor did list the IRS on Schedule F as "disputed, subject to adversary proceed-

ing." However, as noted elsewhere in this Order, the Debtor did not list the proper mailing address for the IRS and it did not receive adequate notice of the filing or the vacating of the order of dismissal so that it could file a timely proof of claim. The Court determines that the IRS has not received adequate notice of this case due to the way it was scheduled on Debtor's schedules and mailing matrix.

Official Bankruptcy Forms contains the forms for schedules in bankruptcy cases. On these forms, instructions are given that advise the filer that the creditor may be listed as disputed. This is the case for Schedules D, E, and F. The Debtor listed the IRS as disputed, but no others. The Debtor's failure to list other creditors, even as disputed creditors, especially ACS with its judgment and LAHA with its secured claim as referenced by the Debtor in the First Case, has resulted in incomplete schedules and provides misleading information to parties inspecting these papers.

Several other factors raise additional questions regarding the accuracy of the Debtor's Statements and Schedules. The Debtor testified that a student loan lien had been discharged in a prior state court action, but did not submit any exhibit referencing the same. It was not scheduled exempt or as an asset on Schedule B on the September 17, 2003 amendment. Lilly introduced Exhibit 59, which was received. It is the Debtor's Objection, dated May 1, 2003, filed in the United States District Court case of *Lundahl et. al v. Robbins,* cv. No. 2:97 CV 951 TS, on file with the United States District Court for the District of Utah, Central Division ("Federal Court Case"). In that exhibit, the Debtor refers to another District Court Case, 2:98 CV 639 K and then refers to a $60,000 "void" student loan in favor of the U.S. Department of Education, a "void" $50,000 default judgment, $50,000 "that are now at issue in the bankruptcy court," and "over $80,000 in medical/dental bills supporting Lundahl's FTCA claim." [53] These statements, made while the Current Case was pending, adds additional concern as to the accuracy of the Debtor's Statements and Schedules. The Debtor also adds the fol-

lowing statement in Exhibit 59: "At the time LUNDAHL re-filed her 2003 bankruptcy petition, LUNDAHL again listed the IRS and state tax board as creditors." The Court can find no reference to any state tax board in any of the Debtor's Statements or Schedules. Not only is this information at best misleading, it also adds uncertainty to the Debtor's financial status.

The Debtor has argued that she did not understand that it was necessary to list these causes of action on her Schedule B. The Court notes, however, that in the above referenced Exhibit 59, the Debtor stated "[Counsel] correctly points out ... that this action is considered property of LUNDAHL'S bankruptcy estate ...." [54] Thus, even though the Debtor clearly understood that her other pending court actions were property of her estate as early as May 1, 2003, she neglected to amend her Schedule B to provide for such.

The Debtor has also provided ambiguous responses on Schedules I and J. As originally filed, Schedule I reflects a $350 disability income plus $1643 from an unrelated Debtor's case, which the Debtor overlooked when she copied the other unrelated Debtor's Schedule I for filing her case. [55] It was not until October 28, 2003 at the confirmation hearing that this error was acknowledged by the Debtor upon examination by Eli Lilly's counsel. It still remains uncorrected on the schedules on file.

The parties have drawn the Court's attention to the Statements and Schedules filed in the First Case. Therein, the Debtor listed LAHA on Schedule D. It is not listed in the Current Case. Neither case has listed any medical bills. The Debtor argues that these medical bills will be tak-

---

53. *See* Creditor's Exhibit 59, pp. 17–18.

54. *See* Creditor's Exhibit 59, p. 17.

55. *See supra* n. 4.

en care of by insurance. Nevertheless, on both November 3, 2003 and December 11, 2003, the Debtor admitted that she had substantial medical bills that were outstanding as of the date of the petition in the Current Case.

■ Although debtors are given latitude by the Court when proceeding pro se, that does not excuse them from complying with the rules of the Court, and especially from providing information to the Court which is signed as being accurate under penalty of perjury.[56]

The Court concludes that in multiple instances the Debtor's Statement of Financial Affairs and Schedules are incorrect and misleading. A debtor may not list incorrect and incomplete information on Statements or Schedules and make an election not to list parties on her theory that the claims are void. The evidence before the Court is that there is a judgment in favor of ACS against the Debtor, which the Debtor purposely left off her schedules. There is also evidence that the IRS has at least a colorable claim against the Debtor that was inadequately scheduled. And by the Debtor's own admissions on her Amended Schedules filed September 17, 2003, some entity has a colorable "educational lien," and yet another entity, Source One Mortgage Services Corp/Empire of America Realty Credit Corp., has claims relating to "uncashed mortgage payments." The aforementioned entries raise questions for which inadequate answers have been given.

In considering all of the foregoing, i.e. the serious question as to whether there is sufficient income to fund a Chapter 13 plan, the Debtor's position that she has no legitimate creditors to pay, the lack of allowed claims to be paid through the Chapter 13 plan, an analysis of the motivation of the Debtor in filing the Current Case, and the inaccurate and misleading responses on her Statement of Financial Affairs and Schedules, the Court concludes that the plan was not filed in good faith and it does not meet the requirements of § 1325(a)(3).

## C. THE CASE WAS FILED IN BAD FAITH

■ Not only was the plan not filed in good faith as required by the Code, the issue arises as to whether the case itself was filed in bad faith. Based on the precedent of the *Gier*[57] case and the above analysis in the Current Case, the Court finds and concludes that under the totality of circumstances, the Debtor's case was filed in bad faith. In accord is the Sixth Circuit's case of *In re Alt*, where that court sustained the lower court's dismissal of a Chapter 13 where there was a finding of bad faith on the part of the Debtor in filing the case.[58]

■ The Tenth Circuit has interpreted dismissal under § 349 to be without prejudice unless there are circumstances that fall within the parameters of § 109(g).[59] Section 109(g) provides that a case may be dismissed with prejudice where the debtor 1) willfully fails to abide by court orders or fails to appear and prosecute the case; or

---

**56.** *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.").

**57.** *Gier v. Farmers State Bank of Lucas, Kansas*, 986 F.2d 1326 (10th Cir.1993).

**58.** *In re Alt*, 305 F.3d 413 (6th Cir.2002).

**59.** *In re Frieouf*, 938 F.2d 1099 (10th Cir. 1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992).

2) requested and obtained dismissal after a motion for relief from stay had been filed.

As part of a ruling made by the Court on November 3, 2003, the Court ordered as follows:

> The matter is deemed submitted as far as paperwork goes. The Court will not consider additional paperwork that is submitted to it. The local rules specifically provide for receipt of certain documents; I deem those all have been received to this point, except for exhibits that are validly received at a proper hearing scheduled before the Court.[60]

Since that date, the Debtor has not complied with that order.[61] Accordingly, there is evidence that the Debtor has not complied with an order of this Court. The Court finds that such non-compliance was willful in that the Debtor was present at the hearing when that order was made. Furthermore, the subject matter and quantity of the papers filed by the Debtor since that ruling evidences the requisite intent to show that her conduct was not inadvertent.

### CONCLUSION

There is sufficient evidence to allow the Court to dismiss this case as set forth above. There is also sufficient evidence to dismiss the case with prejudice pursuant to § 109(g). The Movants have requested dismissal or conversion to Chapter 7 in their papers. Section 1307(c) gives discretion to the Court in deciding whether to dismiss or convert, whichever is in the best interest of creditors and the estate.

In the present case, there are parties that have not had the opportunity of filing claims or otherwise participating in the case up to this point. On its face, the Debtor's estate appears meager and may not provide a basis for distribution to creditors. A Chapter 7 Trustee may have a very difficult time in generating any return to creditors. A Chapter 7 setting may also involve additional adversary proceedings challenging the discharge and/or challenging the dischargeability of debts. In addition, it appears that the Debtor's primary motivation in filing this case was to create another forum for litigation. Overall, the Court concludes that the Debtor does not belong in any bankruptcy case under the facts presented. The Court concludes that dismissal would be in the best interest of the estate and creditors, and so orders. Other forums currently exist for determination of the claims of the parties. This Court will not be used solely as a forum for litigating parties, whoever they may be. Should the Debtor refile any bankruptcy case in the future, under current case law,[62] there most likely would need to be a substantial change of circumstances to overcome what appears to be an insurmountable, persisting image of bad faith that exists with the Current Case for any future case to survive.

Based upon the foregoing analysis, the Court Orders as follows:

1. The above captioned case is dismissed with prejudice to refiling under any Chapter for a period of 180 days from the date of this Order.

2. The Chapter 13 Trustee is ordered to retain his statutory administrative claim from funds on deposit with him and to pay the balance to the Debtor in accordance

---

**60.** *See* transcript p. 123.

**61.** *See* Order entered December 10, 2003 for the specific pleadings and court papers filed by the Debtor in contravention of the Court's prior order.

**62.** *In re Zahniser,* 58 B.R. 530, 535 (Bankr. D.Colo.1986).

with the normal business practice of the Trustee.