In re Donald E. ARMSTRONG, Debtor.

Donald E. Armstrong, Appellant,

v.

Kenneth A. Rushton, Trustee,
and Steppes Apartments,
Ltd., Appellees.

BAP No. UT–03–015.
Bankruptcy No. 02–29051.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Jan. 7, 2004.

Donald E. Armstrong, pro se.

Lon Jenkins, LeBoeuf, Lamb, Greene & MacRae, L.L.P. (Mark W. Dykes with him on the brief), for Appellee Kenneth A. Rushton, Trustee.

Before McFEELEY, Chief Judge, NUGENT, and McNIFF, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Appellant Donald E. Armstrong ("Appellant") appeals from an order of the United States Bankruptcy Court for the District of Utah dismissing his Chapter 13 case for cause on the motion of Appellees Kenneth A. Rushton and Steppes Apartments, Ltd. ("Appellees")[1] pursuant to 11 U.S.C. § 1307(c).[2] Appellant asserts that the Appellees are not creditors in his bankruptcy case and therefore lacked standing to seek the dismissal of his case. Appellant also argues that his Chapter 13 was filed in good faith and that the bankruptcy court abused its discretion in dismissing his Chapter 13 case. After careful consideration of these arguments, we reject them and AFFIRM.

### Factual Background

Appellant is a familiar and frequent litigant in this Court, as well as in the Texas, Utah, and Georgia state courts, the federal courts sitting in Utah, the United States Court of Appeals for the Tenth Circuit

---

1. Appellee Steppes Apartments, Ltd. has not filed a brief in this appeal.

2. Except as otherwise noted, all subsequent statutory references in this opinion are to Title 11 of the United States Code.

("Tenth Circuit"), and the United States Supreme Court. While his actions and positions in these courts are numerous and varied, they ultimately arise from Appellant's discomfiture with a 1997 final judgment entered in the Texas state court in favor of Steppes Apartments, Ltd. ("Steppes"), holding the Donald E. Armstrong Family Trust and the Donald E. Armstrong Charitable Remainder Unitrust ("Trusts") liable for violating the Texas usury laws and levying a multimillion dollar judgment against the Trusts for actual and punitive damages (the "Texas Modified Judgment"). This judgment has been appealed and affirmed through the Texas appellate courts, and certiorari has been denied by the United States Supreme Court.[3]

While the Texas Modified Judgment specifically stated that Appellant, as an individual, was not liable, his subsequent actions in transferring assets from the Trusts to himself or entities he controlled resulted in a lawsuit being filed in the United States District Court for the District of Utah. That court determined that judgment should be entered against Appellant individually, preventing Appellant from contesting that entities he controlled are alter egos, that the transfers offended the Utah Uniform Fraudulent Transfer Act, and that the transfers could be recovered by Steppes.

On March 10, 2000, after the Utah federal district court's minute entry was docketed, but before the judgment could be memorialized in a written order, Appellant filed a Chapter 11 case in the United States Bankruptcy Court for the Southern District of California ("Chapter 11 Case"), which case was transferred to the Utah bankruptcy court due to improper venue. Appellee Rushton was appointed trustee for Appellant's bankruptcy estate. A detailed account of the proceedings leading up to Appellant's Chapter 11 filing and in the Chapter 11 Case itself may be found in this Court's opinion in *In re Armstrong,* 294 B.R. 344 (10th Cir. BAP 2003).

It is sufficient for our purposes here to state that in the Chapter 11 Case Rushton's Amended Plan was confirmed on January 31, 2002 (the "Confirmation Order"). The Confirmation Order contained extensive findings of fact and conclusions of law. The bankruptcy court approved a proposed settlement among the bankruptcy estate, Steppes, and other parties in interest pursuant to which the claims of Appellant (which became property of his bankruptcy estate upon commencement of the case) against Steppes were settled. As part of the implementation of the Steppes settlement and Confirmation Order, the Court entered a broad injunction restraining various parties, including Appellant and the Trusts, from commencing or continuing litigation related to the Steppes controversy (the "Litigation Injunction"). Neither Appellant nor any entity controlled by Appellant was to pursue any claims that were released under the confirmed plan or the Steppes settlement or that were based on the actions of any parties in effectuating either the settlement or the confirmed plan, including Steppes, Rushton, and their counsel.

Appellant appealed the Confirmation Order, but this Court dismissed that appeal as untimely.[4] Appellant then appealed this Court's dismissal order to the Tenth

---

**3.** Appellant's petition for certiorari was denied June 23, 2002, during the pendency of this Chapter 13 case.

**4.** *Armstrong v. Rushton,* BAP No. UT–02–011 (Order dismissing appeal entered June 4, 2002).

Circuit.[5] The Tenth Circuit has yet to decide that appeal. The Confirmation Order has not been stayed pending appeal.

After the entry of the Confirmation Order and Litigation Injunction, Appellant continued to actively challenge both the Texas Modified Judgment entered in favor of Steppes and the actions of Rushton in implementing the confirmed plan. When Rushton sought to have Appellant held in contempt for these violations of the Litigation Injunction, Appellant filed this Chapter 13 Case on June 3, 2002.

Appellant provided this Court with an extensive record on appeal, but omitted copies of his petition and schedules. Nonetheless, his other activities in the case make clear his intentions in filing it. According to the docket in the Chapter 13 Case, Appellant immediately sought leave of the bankruptcy court to proceed before the United States Supreme Court with his challenge to the validity of the Texas Modified Judgment. Additionally, between June 3 and July 26, 2002, Appellant filed the following pleadings in the Chapter 13 Case:

1. Ex parte motions for Fed. R. Bankr.P. 2004 examinations of Steppes's counsel as well as the bankruptcy judge who presided over Appellant's Chapter 11 Case;

2. Subpoenas duces tecum of Steppes's counsel and the Chapter 11 Case bankruptcy judge;

3. Motions to recuse both the Chapter 11 Case bankruptcy judge (who did, in fact, recuse from the Chapter 13 Case) and the bankruptcy judge subsequently assigned to hear the Armstrong matters;

4. A "Motion for Hearing on Excessive Penalties and Due Process" apparently seeking the bankruptcy court's determination that the Texas Modified Judgment violated the United States Constitution;

5. A motion for permission to file an adversary complaint against Rushton, Steppes, and their counsel;

6. A motion, without leave of court, for contempt and sanctions against Rushton; and

7. A motion to transfer the Chapter 13 Case out of the Tenth Circuit.

Finally, on July 29, 2003, Appellant filed in the Chapter 11 Case an adversary proceeding against Rushton, seeking to revoke the Confirmation Order.

On June 7, 2002, Rushton filed a motion to dismiss the Chapter 13 Case for cause under § 1307(c), specifically for violation of the Chapter 11 Confirmation Order and for abuse of the bankruptcy process (*i.e.* bad faith).[6] Commencing on August 6, 2002, the bankruptcy court conducted a multi-day evidentiary hearing on both the motion to dismiss and the Appellees' motion for contempt filed in the Chapter 11 Case.[7]

During the course of that hearing, a partial transcript of which was provided by Appellant as part of the record on appeal, Appellant conceded that, in 1997, he had written a letter to John Feece, interestholder and principal of Steppes, in which he stated that the Steppes litigation would be "our lives' focus" and that he was arranging his estate planning to provide for all of his assets, even after his death, to be dedicated to the prosecution of the Steppes litigation unless Steppes would agree to settle the matter by paying him or his

---

5. *Armstrong v. Rushton,* No. 02–4101.

6. Appellee Steppes later joined in Rushton's motion to dismiss.

7. *See* Transcript of Hearing August 6, 2002 *in* Appellant's App., Ex. 33.

estate $10,000,000. Indeed, Appellant identified an exhibit at trial that he described as an amendment to his family trust which so provides.[8]

Appellant also identified a letter he wrote to the Texas judge presiding over the Steppes litigation in 1997 in which he stated: "If you allow this judgment to become final, you should be shot, and so should Judge McGrath and Judge Crowley. It won't be by me and this is not a threat." Later in the same letter, Appellant wrote: "I will not be destroyed. I will be everyone's biggest nightmare, not out of vengeance, but because I am right and law says so ..."[9]

The hearing transcript is replete with Appellant's admissions on direct examination of his repeated failures to obey court orders issued by numerous state and federal judges, to pay fines and sanctions awarded against him, and to comply with the Litigation Injunction. Moreover, on examination by the bankruptcy judge, Appellant stated that he should never have been punished by the "unconstitutional penalties" levied in the Texas Modified Judgment.[10] He suggested at the hearing that he wanted only to obtain a discharge of certain liabilities to Steppes and to administer what he refers to as "post-bankruptcy" assets.[11]

In its findings of fact, the bankruptcy court noted that Appellant had been discharged of all debts as of July 18, 2002, in his Chapter 11 Case. It also noted the multiplicity of cases and motions filed by Appellant and that the Chapter 13 had only been filed after Rushton's contempt

motion in the Chapter 11 Case was set for hearing. The bankruptcy court enumerated its many orders violated by Appellant, including his repeated violations of the Litigation Injunction and the Confirmation Order.

Specifically, the bankruptcy court noted that the Appellant had failed to cease litigating: (1) the Texas Modified Judgment (Appellant's petition for certiorari was denied during the pendency of the Chapter 13 Case); and (2) pending actions relating to the Steppes litigation in the United States District Court for the Districts of Utah and Northern District of Texas, the Utah bankruptcy court, and Utah state court. Moreover, the Appellant never sought and obtained leave of the bankruptcy court to commence or continue these actions as required by the Confirmation Order and Litigation Injunction.[12] The Appellant had failed to turnover the Feece Guaranty as required by the Confirmation Order.

The bankruptcy court found that Appellant's income was sporadic and came only by virtue of a business Appellant started in May of 2002, a month before the Chapter 13 Case was filed. The bankruptcy court also found that the Appellant reported some $9,000 in unsecured debt on his schedules and that he had recently received approximately $20,000 from a distribution out of a Chapter 11 case involving Mountain Pacific Ventures, Inc., another company he controlled.

Based on these findings, and applying the "totality of circumstances" test articu-

8. Transcript of Hearing at 54, *in* Appellant's App., Ex. 33.

9. *Id.* at 66.

10. *Id.* at 117.

11. *Id.* at 116.

12. In the Chapter 13 Case, the Appellant sought leave to sue Rushton, Steppes, and their counsel. Before the bankruptcy court ruled on his request, the Appellant filed an adversary proceeding against Rushton in the Chapter 11 Case.

lated in *Gier v. Farmers State Bank*,[13] the bankruptcy court concluded that the Appellant's Chapter 13 Case should be dismissed because it appeared to the court that "[t]he debtor's motives in filing this Chapter 13 case are to frustrate the Confirmation Order and the implementation of the confirmed plan and further to collaterally attack the Texas Modified Judgment, which is also impermissible." [14]

The bankruptcy court entered its Order Granting Motion Dated June 7, 2002 of Kenneth A. Rushton, Chapter 11 Trustee, to Dismiss this Chapter 13 Case ("Dismissal Order") on September 11, 2002.[15] Thereafter, Appellant sought reconsideration of the Dismissal Order and a stay of the Dismissal Order pending an appeal. Hearing was held on Appellant's motion for a stay and for reconsideration on December 9, 2002. On February 7, 2003, the bankruptcy court entered its order denying Appellant's requested stay and reconsideration.[16] This appeal followed. Appellant asks us to reverse the Dismissal Order.[17]

### Analysis

Appellant bases his appeal on numerous grounds, most of which need not be addressed here as they principally emanate from Appellant's conviction that the Confirmation Order in his Chapter 11 Case and the prior Texas Modified Judgment, now final by virtue of the Supreme Court's denial of certiorari, can and should be modified. Appellant also suggests that he cannot hope for a fair hearing or disposition from either the bankruptcy judge currently assigned to these cases or this Court. Because we deem these issues to be beyond the scope of the decision appealed from, we decline to dignify them by addressing them here.

We do, however, carefully consider Appellant's assertions that (1) Appellees Rushton and Steppes lacked standing to bring and prosecute the motion to dismiss; (2) the debts and assets to be addressed in the Chapter 13 Case are "post-bankruptcy" and therefore have no impact on the administration of either the Confirmation Order or the confirmed plan; and (3) the bankruptcy court's dismissal for cause is erroneous.

### Standard of Review

The applicable standard of review of an order dismissing a Chapter 13 bankruptcy case is abuse of discretion, while the finding of bad faith supporting the dismissal is reviewed for clear error.[18] Lack of good faith in commencing a case is "cause" for dismissal of a Chapter 13 case under § 1307(c).[19]

In determining whether the Chapter 13 Case was filed in bad faith, the bankruptcy court's action, viewed in the totality of the circumstances, is clearly erroneous only if this Court is left with "the definite and

---

**13.** 986 F.2d 1326, 1329 (10th Cir.1993).

**14.** Order at 7, *in* Appellant's App., Ex. 1.

**15.** *See* Order, *in* Appellant's App., Ex. 1.

**16.** *See* Order, *in* Appellant's App., Ex. 2.

**17.** Appellant's motion to supplement his appendix was referred to this panel. Appellant seeks to include in the record unpublished legal authority and his proposed Chapter 13 plan. We have considered Appellant's motion, and it is granted in part and denied in part. Appellant's Chapter 13 plan will be included as part of the record on appeal. Appellant's motion is denied as to the unpublished Tenth Circuit opinion in *In re Osborn.*

**18.** *In re Davis,* 239 B.R. 573, 576 (10th Cir. BAP 1999).

**19.** *Id.* at 578 (citing *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992)).

firm conviction that a mistake has been committed." [20]

*Appellees' Standing to Seek Dismissal*

■ Section 1307(c) provides, in relevant part: "Except as provided in subsection (e) [not applicable here] of this section, on request of *a party in interest* or the United States trustee and after notice and a hearing, the court . . . may dismiss a case under this chapter . . . for cause, including—. . . ." [21]

■ Appellant argues that because neither Rushton nor Steppes filed a proof of claim in his Chapter 13 Case, they lack standing to pursue dismissal of his case.[22] We disagree. A person need not have filed a proof of claim in order to be a "party in interest." Nor is a "party in interest" limited to creditors in the Chapter 13 Case. Drawing guidance from § 1109(b), this Court has interpreted the phrase "party in interest" to mean all persons whose pecuniary interests are directly affected by the bankruptcy proceedings and includes anyone who has an interest in the property to be administered and distributed under the Chapter 13 plan, including the trustee in a debtor's pending Chapter 7.[23]

This Court similarly concludes that Rushton, as the trustee in Appellant's confirmed Chapter 11 Case, is a party in interest. Rushton has an interest in ensuring that Appellant does not claim property in the Chapter 13 Case that is already being administered by Rushton under the confirmed plan in the Chapter 11 Case and that Appellant does not violate the Confirmation Order through the Chapter 13 proceedings. Likewise, Steppes has an interest in the Chapter 13 Case by virtue of its continuing right to pursue a nondischargeability complaint against Appellant, a right that was recognized in the Confirmation Order in Appellant's Chapter 11 Case. Indeed, Appellant has cited Steppes's nondischargeability complaint as one of the reasons for filing his Chapter 13 Case.

Moreover, both Rushton and Steppes may have claims or debts arising after the Chapter 11 Confirmation Order that have not been discharged. For instance, the record amply demonstrates that Appellant has undertaken many actions since the Confirmation Order was entered that would form the basis for claims held by these Appellees.[24] Indeed, argued on the same day as this appeal was another appeal by Appellant from a contempt order and sanctions. The Appellees moved for an order of contempt against Appellant for repeated violations of the Confirmation Order and Litigation Injunction. In those contempt proceedings, the bankruptcy court found the Appellant to be in contempt and assessed sanctions against him, including repayment of attorneys fees and expenses incurred by the Appellees in the contempt proceedings. The contemptuous actions and omissions occurred after the entry of the Confirmation Order and thus

20. *Id.* at 576 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). *See also Gier v. Farmers State Bank (In re Gier),* 986 F.2d 1326, 1329 (10th Cir.1993).

21. 11 U.S.C. § 1307(c) (emphasis added).

22. Steppes did file a proof of claim in Appellant's Chapter 11 Case. *See* Appellant's App., Ex. 10.

23. *In re Davis,* 239 B.R. at 579.

24. Section 101(5) defines a claim as a right to payment or a right to an equitable remedy for a breach of performance giving rise to a right to payment. A debt is defined in § 101(12) as liability on a claim. A creditor is defined in § 101(10) as an entity having a claim against the debtor that arose before the entry of the order for relief.

form the basis of debts owed by the Appellant to the Appellees.[25] On this additional basis, the Court concludes that Appellees Rushton and Steppes are parties in interest in Appellant's Chapter 13 Case with standing to pursue dismissal of the Chapter 13 Case.

### Post–Bankruptcy Property and Debts

The Appellant has steadfastly maintained that he has post-Chapter 11 bankruptcy property that he is entitled to protect by his Chapter 13 filing. The Appellant has not clearly articulated or described this so-called post-bankruptcy property and we are unable to review and discern its nature because Appellant's record on appeal lacks his schedules. It would appear, however, that Appellant asserts some nebulous right or property as a beneficiary of the Trusts.

Even this assertion is another collateral attack on the Confirmation Order and findings contained therein. The bankruptcy court has previously determined in the Chapter 11 Case:

> V. *Surrender Motion.* In connection with Surrender Motion, the Debtor has at all relevant times been the trustee of the Charitable Remainder Unitrust . . . and the Armstrong Family Trust. . . . The rights of the Debtor as settlor and income beneficiary under the Armstrong Family Trust became property of this Estate. The rights of the Debtor as donor and recipient under the Charitable Remainder Unitrust also became property of this Estate. Also, two judgments . . . transferred the rights to all of the property of the Charitable Remainder Unitrust and the Armstrong Family Trust to the Debtor prior to the Debtor's bankruptcy filing. Thus, all of the property of the Trusts became property of this Estate.[26]

The Appellant was ordered to surrender to Rushton all causes of action, claims, and non-exempt assets in his possession as of the date of filing, March 10, 2000. "Such interests include the rights as settlor and beneficiary under the Armstrong Family Trust and the rights as recipient and donor under the Charitable Remainder Unitrust."[27] In short, the bankruptcy court has previously ruled in the Confirmation Order that Appellant has no post-petition interests or rights in the Trusts, including any interest as a beneficiary under the Trust.

### Dismissal for Cause and Finding of Bad Faith

■ This leaves us to determine whether the bankruptcy court erred when it dismissed Appellant's Chapter 13 Case for cause, finding that Appellant had failed to comply with the Confirmation Order and had abused the purpose and spirit of the Bankruptcy Code. The bankruptcy court examined, as do we, the standards set out

---

**25.** While the bankruptcy court's findings included an assertion that the Appellant's Chapter 11 discharge became effective July 18, 2002, we conclude that, pursuant to § 1141(d)(1)(A), his discharge applied to all debts arising up to the date of confirmation, January 31, 2002. Debts arising after that time would be post-Chapter 11 debts, which would be addressed in a later case. Because the Appellees' claims arose post-Chapter 11 discharge and pre-Chapter 13 Case commencement, the Appellees are creditors and parties in interest in the Chapter 13 Case and clearly have standing to seek its dismissal, particularly where the Appellant's repeated actions profoundly affect the Appellees' interests.

**26.** Confirmation Order at 17–18, *in* Appellant's App., Ex. 31.

**27.** *Id.* at 20.

in Tenth Circuit jurisprudence for determining whether a case has been brought in good faith and whether dismissal is warranted.[28]

■ *Gier v. Farmers State Bank (In re Gier)*[29] stands for the proposition that the same factors used in determining whether a plan should be denied confirmation for lack of good faith under § 1325(a)(3) may be considered to determine whether a case should be dismissed for cause pursuant to § 1307(c). The examples of cause listed in this subsection are not exclusive, and good faith inquiries have traditionally been encompassed by § 1307(c). While lack of good faith is not expressly mentioned, a lamentable waste of judicial resources would result from allowing Chapter 13 cases filed in bad faith to progress to confirmation, particularly where, as here, the debtor's actions are so egregious.

■ The standards, first adopted by this Circuit in *Flygare v. Boulden*,[30] include eleven factors that courts should consider in determining good faith and whether the totality of the circumstances warrants dismissal of the Chapter 13 case. A list of these elements is as follows:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.[31]

The *Flygare* court noted that the list of factors is not exhaustive and that the weight afforded a given factor will vary with the facts and circumstances of each case.

Thus, to dismiss a Chapter 13 case or deny confirmation of a Chapter 13 plan, all of the elements need not weigh the same, nor must all of them be present. Here again, our review of all the elements is hampered because the Appellant has failed to designate a sufficient record to enable us to evaluate many of the *Flygare* elements. The Appellant has not included in

---

28. *See Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326 (10th Cir.1993) (totality of circumstances must be considered in determining whether Chapter 13 case has been filed in bad faith); *Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703 (10th Cir. 1989) (bad faith to be judged by the totality of the circumstances on a case by case basis); *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983) (eleven factors enumerated for consid-

eration under totality of circumstances approach).

29. 986 F.2d 1326, 1329–30 (10th Cir.1993).

30. 709 F.2d 1344 (10th Cir.1983).

31. *Id.* at 1347–48 (quoting *United States v. Estus (In re Estus)*, 695 F.2d 311, 317 (8th Cir.1982)).

the record before us his schedules, and thus factors one (1) through eight (8) and factor eleven (11) relating to the efficacy of the debtor's plan, the nature and extent of his debts, and administrative burden upon the trustee, cannot be meaningfully reviewed.

However, there is more than adequate evidence in the record before us to evaluate factors nine (9) and ten (10), the most relevant elements in this case and the elements on which the majority of the evidence was presented at the hearing: the frequency of relief sought and the motivation and sincerity of the debtor.

With regard to the ninth factor, the bankruptcy court found that while the Appellant could have continued his work as a real estate broker, he had instead filed "an avalanche of litigation ... together with suits against judges, lawyers, trustees, and creditors" and that his litigious practices had "become not only an obsession for the Debtor but a full time calling."[32] The Appellant's repeated collateral attacks of the Confirmation Order entered in the Chapter 11 Case and the final Texas Modified Judgment, combined with numerous other cases referenced in the record before us, indicate that he has continuously sought repetitious relief in one form or another and more than amply satisfy the element of "frequency of relief sought."

Even more damning, though, is an examination of the Appellant's motivation and sincerity. Both in his briefs and in oral argument before this Court, Appellant insisted that his only aim in filing the Chapter 13 Case was to gain a fresh start and retain what little property he has left in order to survive financially. He imp-

lored us to give him that opportunity. Yet, Appellant's pleas ring hollow when heard in the context of his previous actions, both in the Chapter 11 Case and in the Chapter 13 Case. Appellant's repeated and seemingly remorseless violations of the Confirmation Order and Litigation Injunction, even after the Chapter 13 Case was filed, belie his aims. Appellant's efforts within the Chapter 13 Case, namely to (1) challenge the constitutionality of the Texas Modified Judgment notwithstanding his unsuccessful appeals and petition for certiorari to the Supreme Court; (2) depose and subpoena not only Steppes's counsel but also the bankruptcy judge who approved the Steppes settlement and entered the Confirmation Order; and (3) commence or pursue litigation in violation of the Litigation Injunction, render his arguments disingenuous.[33]

### Conclusion

In sum, we cannot find that the bankruptcy court committed clear error in determining that Appellant's Chapter 13 Case was filed in bad faith. Rather, we are left with the inescapable conclusion that under the totality of the circumstances, Appellant's action in filing the Chapter 13 Case constitutes "an abuse of the provisions, purpose or spirit of [Chapter 13]."[34] The bankruptcy court did not abuse its discretion in dismissing Appellant's Chapter 13 Case for cause under § 1307(c). The order dismissing the Chapter 13 Case is AFFIRMED.

32. Order at 6, *in* Appellant's App., Ex. 1.

33. In his brief filed in this appeal, Appellant's statement of the issues and argument on the issues clearly reflect his collateral attack on the Texas Modified Judgment and the Confir-

mation Order and Litigation Injunction. *See* Appellant's Initial Brief at 1, 22–40.

34. *Gier,* 986 F.2d at 1329 (quoting from *In re Love,* 957 F.2d 1350, 1357 (7th Cir.1992) (further quotation omitted)).