**In re OPTINREALBIG.COM, LLC, Debtor.**

**In re Scott Allen Richter, Debtor.**

**Nos. 05–16304 HRT, 05–16340 HRT.**

United States Bankruptcy Court, D. Colorado.

April 4, 2006.

John C. Smiley and Harold G. Morris, Jr., Lindquist & Vennum, P.L.L.P., for OptinRealBig.com, LLC.

Harvey Sender and Bonnie Bell Bond, Sender & Wasserman, P.C., for Scott Allen Richter.

D. Bruce Coles, Fish & Coles, for Infinite Monkeys & Co., LLC.

### ORDER DISMISSING CHAPTER 11 CASES

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on the *Joint Motion of Debtors, OptinRealBig. com, LLC, and Scott Allen Richter, to Dismiss Case for Good Cause* (docket # 223) [the "Motion"].

The Court held a hearing in this matter on November 21, 2005. It has considered the evidence presented and the statements of counsel; the Court has reviewed the pleadings in this matter, including the Motion; *Objection to Debtor's Joint Motion to Dismiss Cases* (docket # 250); *Reply in Support of Disclosure of Settlement Agreements* (docket # 277); *Debtors' Memorandum Brief in Support of Motion to Dismiss Cases for Good Cause* (docket # 314); *Hearing Brief of Infinite Monkeys in Opposition to Joint Motion to Dismiss Bankruptcy Cases* (docket # 323). In addition, the Court has reviewed its file and, being informed in the matter, the Court is ready to make its ruling.

### I. BACKGROUND

These cases were filed on March 25, 2005. OptInRealBig.com ["OptIn"] is a corporation which provides e-mail advertising services. Scott Allen Richter ["Richter"] is the 40% shareholder of the company. Richter indirectly owns the remaining 60% of the company through other entities he controls. The OptIn and Richter cases are being jointly administered pursuant to the Court's order of April 13, 2005, approving the Debtors' motion requesting joint administration.

The Debtors have operated as debtors-in-possession in these chapter 11 cases since the petition date. At the time the bankruptcy cases were filed, OptIn and Richter were embroiled in litigation with Microsoft Corporation ["Microsoft"] and also in litigation with American Family Mutual Insurance Company ["American Family"] concerning coverage issues related to the Microsoft litigation. Microsoft was asserting a claim against the Debtors in the amount of approximately $57 million for alleged violations of a Washington state law relating to e-mail advertising. At the same time, OptIn and Richter were parties to somewhat less significant litigation in various jurisdictions around the country. It was the Debtors' hope that these pieces of litigation could all be dealt with in a single forum under the auspices of this Bankruptcy Court.

In July of 2005, the Court granted a motion to stay certain proceedings in order to allow Microsoft and the Debtors to explore settlement options through alternative dispute resolution. The parties were successful in settling a number of related matters, including: 1) the litigation with Microsoft; 2) Microsoft's adversary case against Richter for denial of discharge; 3) a relief from stay motion filed by Microsoft; 4) a motion to dismiss on grounds of bad faith; and 5) the determination of coverage and potential for reimbursement of fees and costs associated with the Debtors' dispute with American Family. Shortly after reaching these settlements, the Debtors filed this Motion to dismiss their bankruptcy cases. Consummation of the settlements is contingent upon the dismissal.

Scott Richter was the only witness at the November 21, 2005, hearing on this Motion. Richter testified that the Debtors have seen a 20% increase in their business since the settlements with Microsoft and American Family were announced. He estimated that total revenues for the year 2005 would be approximately $60 million.

## II. DISCUSSION

### A. Infinite Monkeys Lacks Standing to Object to Dismissal of Richter's Case

As an initial matter, the Court notes that Infinite Monkeys is the only party that is prosecuting an objection to the dismissal of these cases. It is an interested party in the case of OptInRealBig.com because it filed a proof of claim in that case. The bar date for filing proofs of claim in Richter's case was set for July 29, 2005, and Infinite Monkeys filed no proof of claim in that case. Consequently, it is not an interested party in the case of Scott Allen Richter.

A party in interest " 'is generally understood to include all persons whose pecuniary interests are, directly affected by the bankruptcy proceedings.' " *Nintendo Co. Ltd. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir.1995) (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir.1993)); *Armstrong v. Rushton (In re Armstrong),* 303 B.R. 213, 219 (10th Cir. BAP 2004). Having the status of a creditor who has filed a proof of claim in a proceeding is not a necessary condition precedent to being considered a party in interest. *In re Armstrong,* 303 B.R. at 219. But, in this case, without Infinite Monkeys having filed a proof of claim in Richter's case, it does not appear that it has any economic stake in the outcome of the case.

As a consequence, no proper party in interest has objected to the dismissal of Scott Allen Richter's case. On that basis alone, the Court would dismiss Case No. 05–16340, filed by Scott Allen Richter. However, the following discussion applies

equally to his case as it does to the OptIn-RealBig.com case.

## B. Dismissal or Conversion Under 11 U.S.C. § 1112

The conversion or dismissal of a Chapter 11 bankruptcy proceeding is controlled by 11 U.S.C. § 1112. That section was significantly amended by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ["BAPCPA"]. The amendments to § 1112 became effective on October 17, 2005. Since these cases were filed on March 25, 2005, prior to the effective date of the amendments, the pre-BAPCPA version of § 1112 applies to the Court's determination in this case.

Section 1112(b) addresses dismissal of a chapter 11 case and reads as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, *for cause,* including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or

a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(emphasis added).

■ Dismissal or conversion of a chapter 11 case under 11 U.S.C. § 1112(b) is a two step process. First, the Court must determine if "cause" exists for dismissal or conversion of the chapter 11 case. Next, the Court must determine whether dismissal or conversion of the case is in the best interest of creditors and the estate. *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 242 (4th Cir.1994) ("A motion filed under this section invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in 'the best interest of creditors and the estate.' ") (quoting *In re Mechanical Maintenance, Inc.,* 128 B.R. 382, 386 (E.D.Pa.1991)).

## C. The Debtors' are Proper Parties to Make a Motion Under § 1112(b)

■ The initial question is whether the Debtors are proper parties to move for dismissal under § 1112(b). The examples of cause which appear in § 1112(b) center upon those situations where a debtor is incapable of reorganizing or the process of reorganization has been unacceptably delayed by a debtor's lack of action. They are the types of cause that are most likely to be raised by a creditor or the U.S.

Trustee. Nonetheless, § 1112(b) permits a motion to dismiss to be made by any party in interest. The Debtors are, indisputably, parties in interest in their own cases. Even though the examples of cause recited in § 1112(b) are not the type of allegations likely to be raised by a debtor as cause for dismissal of its own case, they are only examples and the Court is not restricted to looking only to § 1112(b)(1) through (10) to find cause for dismissal of these cases. Because the Debtors are clearly parties in interest, they are permitted to make a dismissal motion as they have done here.

### D. Cause for Dismissal or Conversion Exists

■ The cause claimed by the Debtors in their Motion is that they have reached a settlement with Microsoft, their primary litigation nemesis. The question for this Court is whether that is a circumstance that constitutes cause for conversion or dismissal under § 1112(b). The Court finds that cause has been shown in this case.

■ The law favors consensual settlement of disputes. The 10th Circuit Court of Appeals has said that "[t]he inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir.1977); see also *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910) ("compromises of disputed claims are favored by the courts") (citing *Hennes-*

*sy v. Bacon,* 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890)).

■ The Debtors no longer desire to continue down the road to reorganization. The evidence makes it clear moreover that reorganization is not necessary for these Debtors. They are able to return to the marketplace and operate successfully without the assistance of the Bankruptcy Court. Reorganization is a process that is costly and time consuming for the parties and for the Court. Where there has been a material change in a debtor's circumstances, such that reorganizing under the protection of the Bankruptcy Court no longer serves the interests of a debtor or its creditors, then the Court believes that cause exists for dismissal or conversion of the case under § 1112(b).

The Debtors' circumstances have materially changed since the filing of the case. At the time the case was filed, the Debtors were engaged in litigation with Microsoft, a very formidable litigation adversary, and also with their own insurance company over the question of whether or not the litigation costs were going to be covered. Those litigation matters took time and resources away from the Debtors' business. The Debtors' believed that their business was threatened due to the combined effects of that litigation along with other smaller lawsuits filed in other courts throughout the country.

The Debtors made the most of the breathing spell that they received as a result of their bankruptcy filings. They entered into mediation with Microsoft and American Family. The settlements that they entered into fully resolve those litigation matters upon dismissal of the cases.[1]

---

1. While the Microsoft litigation is resolved when the cases are dismissed, Infinite Monkeys is ready to take its place as a litigation adversary. However, it appears to the Court that the Debtors are on a much more level playing field in litigating against Infinite Monkeys and the Court accepts the Debtors' business judgment that they are in a position to deal with the prospective Infinite Monkeys litigation in the ordinary course of their business.

Through the mediation and ultimate settlement of those matters, the Debtor's have accomplished a substantial reorganization. The Court finds that the change in the Debtors' circumstances obtained through the settlement of the Microsoft and American Family claims is sufficient cause for dismissal or conversion.

*E. The Court Cannot Find that Conversion is in the Best Interest of Creditors and the Estate*

■ Once a court turns to the second question of determining what is in the best interest of creditors and the estate, it must ascertain the impact on the creditors and on the estate of each of the options. Thus, it has been noted that the inquiry for this element cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law.

*Rollex Corp. v. Assoc. Materials, Inc. (In re Superior Siding & Window, Inc.*), 14 F.3d 240, 243 (4th Cir.1994) (citing *In re Mech. Maint., Inc.*, 128 B.R. 382 (E.D.Pa. 1991)). In *Rollex*, the Fourth Circuit observed that, because the policy of equality of distribution is central to the Bankruptcy Code, one of the factors to be considered in determining the best interests of creditors is whether dismissal or conversion would best serve that policy. *Id.*

■ The Court cannot find that conversion of this case is appropriate. These Debtors received a breathing spell afforded to them by the automatic stay. In addition to giving the parties an opportunity to engage in settlement negotiations, it appears to the Court that another beneficial effect of the Debtors' breathing spell has been to allow the Debtors to spend more time concentrating on their core business and less time dealing with litigation issues. The Debtors have been profitable since the filing of the bankruptcy

cases. These cases were filed on March 25, 2005. For the 10 month period from the petition date through January, 2006, OptIn has reported total gross operating revenues of $47,349,667.00. It has reported total net profits of $7,725,508.00. That degree of profitability for a chapter 11 debtor of OptIn's size is unusual in this Court's experience.

The Debtors' economic value is derived from the ongoing operations of the Debtors' business and the services that they provide. These are not Debtors with hard assets that would make chapter 7 liquidation of their assets a rational choice. Infinite Monkeys argues that there are substantial preferences that may be recovered by a chapter 7 trustee. But the Court finds no persuasive evidence to support Infinite Monkeys' contention.

The payments that Infinite Monkeys argues are recoverable preferences are primarily payments to OptIn's affiliates. The evidence presented at trial was that these payments were made in the ordinary course of the Debtors' business. Infinite Monkeys presented no evidence stronger than mere speculation that those payments could be recovered by a chapter 7 trustee for the benefit of creditors. The Court views this hypothetical preference litigation as having little utility based on the evidence of how the affiliates were paid.

The Court is not convinced that if these cases were converted to Chapter 7, that there would be assets to be distributed to creditors greatly in excess of the money the Debtors have in the bank. In this case, that is not insubstantial; it adds up to something in excess of $7 million. But, because the Microsoft and American Family settlements are not effective if the case is converted rather than dismissed, Infinite Monkeys' $44 million claim would be in competition with Microsoft's $57 million claim against both Debtors, as well as

American Family's $1.4 million claim against OptIn and its $1.3 claim against Richter, not to mention the other creditors. Conversion of the cases would place Infinite Monkeys in competition with Microsoft and American Family for a pro-rata share of an estate worth maybe $7 million, as opposed to litigating its claim, without competition from Microsoft and American Family, against a financially healthy adversary. The Court cannot find that conversion of the cases serves Infinite Monkeys' or any other creditors' best interests. The Debtors have demonstrated that their profit potential is large enough so that they are worth a great deal more to their creditors, including Infinite Monkeys, as a going concern outside of bankruptcy than they are as Debtors, subject to liquidation by a chapter 7 trustee.

### F. Dismissal is in the Best Interest of Creditors

Two creditors have been active in the case. The Debtors' litigation with Microsoft was well under way at the time the bankruptcy cases were filed and, in fact, provided the motivation for the chapter 11 filings. Infinite Monkeys came later to the party. It had not commenced any litigation against either of the Debtors prior to the petition date.

In one sense, both of those creditors are similarly situated. Neither has ever had any direct business association or relationship with the Debtors. Both obtain their status with respect to these Debtors under a particular type of state law commonly known as a private attorney general statute. These statutes are common in the consumer protection area of law and they provide an incentive for private parties to bring actions that vindicate state interests. In particular, both creditors base their claims against the Debtors on the basis of state anti-spam statutes, which allow private parties to bring actions to enforce state laws against the sending of junk e-mail.[2] In this Court's experience with creditors in chapter 11 cases, this type of claim is unique. A typical creditor's claim is based on its direct business dealings with a debtor; a tort claim against the debtor; or some other more direct connection. Neither of these creditors have such a relationship.

But Microsoft and Infinite Monkeys are very differently situated in at least a couple of other senses. Even though Microsoft has not engaged in direct business dealings with the Debtors, it is an internet service provider, which serves businesses and consumers. Microsoft's system has given the Debtors the ability to reach large numbers of potential buyers with its email advertising messages. As an internet service provider, Microsoft asserts that its business interests have been directly harmed by activities alleged to have been carried out by the Debtors and which violate anti-spam statutes.

On the other hand, the evidence shows that Infinite Monkeys has no business in the traditional sense of the term. It doesn't make a product, provide services or have customers. Infinite Monkeys was established for the express purpose of suing parties for violations of anti-spam statutes. It has purchased large numbers of dormant domain names for the purpose of setting up spam traps to provide it with a

---

**2.** What is and is not "junk e-mail," to a certain extent, may be in the eye of the beholder and may be too broad a term. The specific target of the Washington anti-spam statute is e-mail communication which "misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message." Wash. Rev. Code § 19.190.020. The California statute is more broadly written to target "unsolicited commercial e-mail advertisements," Cal. Bus. & Prof. Code § 17529 et seq.

basis to initiate lawsuits against e-mail advertisers for failure to operate in accordance with the anti-spam statutes.

These creditors are differently situated in another important sense. The Debtors have entered into a settlement agreement with Microsoft. The settlement deeply discounts Microsoft's $57 million monetary claim to $7 million. However, it subjects the Debtors to monitoring to insure that future operations do not run afoul of anti-spam laws. Payment of $7 million to Microsoft under the settlement is contingent upon a dismissal of the bankruptcy cases. The Debtors have entertained no similar settlement with Infinite Monkeys.

The Court has neither held a hearing on approval of the settlement agreements, nor requested that they be filed with the Court. Nonetheless, the Court has heard testimony regarding the settlements. As the Court noted previously, the Microsoft settlement requires the payment of $7 million from the Debtors to Microsoft and requires the Debtors to submit to monitoring of their practices to insure compliance with applicable laws regulating transmission of e-mail advertising.

The American Family dispute involves its obligation, under the terms of its insurance policies, to pay the costs of the Debtors' litigation with Microsoft. It has defended that action under a reservation of rights and has asserted claims in the amount of $1.4 million against OptIn and $1.3 million against Richter to recover the expenses it has incurred. The Court's information regarding the American Family settlement is limited because it is contingent upon complete confidentiality as to specific terms. However, the Court did hear testimony that upon consummation of the settlement, American Family is no longer asserting claims against the Debtors and American Family will make a payment to the Debtors of an unspecified amount.

If this Court denies the dismissal motion, Microsoft, American Family and Infinite Monkeys will all assert their claims in the bankruptcy proceedings. On the other hand, if the cases are dismissed, then the Debtors will consummate the Microsoft and American Family settlements and Infinite Monkeys will be free to carry out its business plan of litigating its anti-spam statute claims in the courts of California.

In the Court's view, there are two pivotal factors present in this case. First of all, as the Court noted above, OptIn has been quite profitable for a chapter 11 debtor of its size. Also, both Microsoft and Infinite Monkeys' claims against the Debtors are predicated upon recently enacted state anti-spam statutes with little published guidance on their interpretation. The Court's research has turned up few published cases from the state and federal courts of Washington and California. Thus, there is a paucity of authority from courts inside of those jurisdictions that courts in other locations may use to interpret these state law claims. Because of the federal judiciary's strong interest in comity with state courts, bankruptcy courts frequently abstain from hearing controversies that would require them to make determinations of unsettled state law issues. 28 U.S.C. § 1334(c); *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993) (citing *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *Matter of L & S Industries, Inc.,* 989 F.2d 929, 935 (7th Cir.1993); *Coker v. Pan American World Airways, Inc. (In re Pan American Corporation),* 950 F.2d 839, 846 (2nd Cir.1991); *In re United Sec. & Communications, Inc.,* 93 B.R. 945, 960 (Bankr.S.D.Ohio 1988); H.R. Rep. No.

595, 95th Cong., 1st Sess. 51 (1977), reprinted in, 1978 U.S.C.C.A.N. 5963, 6012).

■ In making its determination of the best interests of creditors, Infinite Monkeys would have this Court focus only on its interests because it is the objecting creditor. But the Court cannot read § 1112(b) so narrowly. The Court's discussion does center largely on Microsoft and Infinite Monkeys. They are the primary creditors who have been active in these cases. Both Microsoft and Infinite Monkeys are asserting extremely large claims; Microsoft's claim is approximately $57 million and the Infinite Monkeys' claim is just less than $44 million. Their combined claims make up over 98% of the claims in the cases and completely overwhelm the other claims. That said, the Court must make its determination based on the best interests of all creditors. *Rollex Corp. v. Assoc. Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir.1994) ("[I]n evaluating the interests [of creditors], the court must consider the interests of all of the creditors."). Even if smaller creditors seem to get lost in the discussion, those interests must be taken into account.

For the purposes of this analysis, the Court will not delve deeply into the merits of either the Microsoft claim or the Infinite Monkeys claim. It will assume that both claims share an equal footing. However, that analytical assumption constitutes a charitable view of the Infinite Monkeys claim. Infinite Monkeys was formed just one week before these chapter 11 cases were filed. In his deposition, Ronal Guilmette, Infinite Monkeys' principal, acknowledged that neither he nor anyone else on behalf of Infinite Monkeys had performed more than the most cursory review and analysis of a tiny fraction of the e-mail messages on which Infinite Monkeys is basing its claim. At hearing, the Court heard uncontroverted testimony that 75% of the e-mails contained on the computer disk that Infinite Monkeys provided to the Debtors in support of its claim were sent prior to the date Infinite Monkeys came into existence. Of the 38,698 email messages contained on that disk, only 83 of them were sent by OptIn. Approximately 95% of the messages were sent by entities that have advertising contracts with OptIn. The Debtors argue that Infinite Monkeys' claim is without merit and that the sole purpose of its participation in these proceedings is to extort a settlement out of the Debtors. Judging from Infinite Monkeys' business plan; the lack of care with which it supported its claim; the nature of the pleadings that it has filed in these proceedings; and the nature of the arguments it has put forward, the Court finds it hard to dispute the Debtors' contention.

As to Microsoft and Infinite Monkeys, there is unlikely to be any litigation advantage to either party if the Court denies the Debtors' motion to dismiss. As the Court noted above, these cases involve state law claims under relatively new anti-spam laws. With few reported cases under either the Washington state or California statutes to offer guidance as to interpretation of those laws, it is likely that this Court would abstain from hearing such cases because of the federal interest in allowing courts located within those jurisdictions to decide the cases that will establish how those statutes are to be interpreted. So, even if the Court were to deny dismissal, the litigation of those claims would likely proceed in the California and Washington courts according to the timetable established by those courts.

Within a converted case, the final adjudicated claims of Microsoft and Infinite Monkeys would be adjusted and paid their pro-rata share of the funds available for

distribution. The $7 million that the Debtors have in the bank, less the fees and expenses of a chapter 7 trustee, would doubtless make up the bulk of any assets to be distributed. With both the Microsoft and Infinite Monkeys claims being asserted in the case, it is likely that the trustee would be stuck in the middle of these two creditors at war with each other for the available funds. In that event, the chapter 7 trustee would likely spend significant time and incur substantial professional fees in determining the allowed amounts of these two claims.

Outside of bankruptcy, Microsoft achieves certainty as to the treatment of its claim but Infinite Monkeys is subject to the same uncertainty as to the outcome of its case against the Debtors. Microsoft supports the Motion and the Court finds that dismissal is clearly in Microsoft's interest because of its settlement agreement. To the extent that Infinite Monkeys' claim is litigated on the merits, whether these cases are converted or dismissed makes no difference to Infinite Monkeys' litigation prospects. In either case, it has to litigate its claim in the California courts.[3] In the event that Infinite Monkeys is successful in litigating its claim, the ultimate effect of dismissal on Infinite Monkeys is that it removes a pot of money from the Debtors' estates that all of the creditors would have looked to for a recovery. That is not an insignificant bird-in-the-hand. Nonetheless, whatever advantage there is in forcing a conversion of the cases is offset by the Debtors' financial wherewithal to respond to any judgment which may be entered in favor of Infinite Monkeys outside the strictures of the bankruptcy case. Finally, given the Debtors' current profitability, conversion to chapter 7 is an unlikely event anyway.

The greatest benefit for the greatest number of creditors is represented by the dismissal of these bankruptcy cases. The Court has discussed primarily the interests of Microsoft and Infinite Monkeys because of the size of their claims. However, the Court is quite mindful of the remaining creditors in the case. The bulk of the remaining claims come from OptIn's trade creditors. As chapter 11 cases go, it is not a large creditor group; 35 proofs of claim have been filed in the OptIn case and two of those are duplicates; 18 proofs of claim have been filed in Richter's case.[4] The combined remaining claims represent only a tiny fraction of the Microsoft and Infinite Monkeys claims.[5] Yet, within the bank-

---

3. This assumes Infinite Monkeys' good faith. For a party who is pursuing what it genuinely believes is a meritorious claim, the prospect of a full trial on the merits, against a financially healthy defendant, in the jurisdiction where the statute originated, does not strike this Court as a disadvantageous position to occupy. If the Court were to accept the Debtors' more cynical view of Infinite Monkeys' motivation, then a desire to act as a thorn in the Debtors' side in a chapter 11 case, or to negotiate a settlement with a chapter 7 trustee in a converted case, might make more sense.

4. No formal proof of claim has been filed by Microsoft in these cases. In order to facilitate ongoing settlement discussions between the Debtors and Microsoft, the Court extended a number of deadlines and held several pending matters in abeyance. In an Order entered on July 20, 2005, the Court extended the deadline for Microsoft to file a proof of claim to August 29, 2005. In an Order entered on August 10, 2005, the Court further extended that deadline to September 29, 2005. Finally, during a hearing held on September 21, 2005, the Court ordered that the deadline for Microsoft to file its proof of claim would be held in abeyance pending further order of the Court.

5. In OptIn's case, other anti-spam statute litigation claims come to a mere $155,712.15; the several trade debt claims, total $327,697.34. In addition to those, there is a $1.4 million insurance coverage dispute claim filed by American Family Insurance, which

ruptcy case, the claims of those creditors [6] would remain hostage to the resolution of the two larger claims and, even then, the funds available in a converted case would pay only a tiny dividend unless the Microsoft and Infinite Monkeys claims are disallowed. Outside of bankruptcy, the Debtors have stated, on the record, that it is their intention to deal expeditiously with those claims. They intend to settle their undisputed debts and to litigate the disputed legal claims that have been asserted against them.

The Court affirmatively finds that dismissal is in the best interests of Microsoft and of the remaining creditors with the possible exception of Infinite Monkeys. Because the Court accepts Infinite Monkeys' business judgment that dismissal is not in its best interest, the Court so finds.[7] At the same time, the Court finds that Infinite Monkeys is not prejudiced by dismissal. As the Court explained above, the course of the Infinite Monkeys litigation is unlikely to be greatly affected by dismissal. The major down-side of dismissal is that the Microsoft settlement removes funds from the estate that would have been available to fund a dividend to creditors in a converted case. But, in the Court's view, that disadvantage is offset by the removal of Microsoft's claim as a contender to share, along with the Infinite Monkeys claim, in the available dividend. Judging from the claims asserted in this proceeding, after dismissal and consummation of the Microsoft settlement, Infinite Monkeys will be litigating its claim in its home forum against a prosperous business and with little significant competition from other claimants.

### G. Dismissal is in the Best Interest of the Estate

Infinite Monkeys argues that dismissal of this case should be denied because such dismissal would prefer the interests of Microsoft and American Family over the interests of Infinite Monkeys. As the *Rollex* court pointed out, equality of distribution is a fundamental bankruptcy principal that must be taken into account when a court considers whether to dismiss or convert a case. 14 F.3d 240, 243 (4th Cir.1994).

It is also fundamental that, outside of bankruptcy, creditor's rights are determined under state law and non-bankruptcy federal law. A creditor's diligence; the forum in which its case is heard; the merits of its position; the financial position of the debtor; and a myriad of other factors influence a creditor's fortunes outside of the bankruptcy court. Because a debtor and its creditors leave the jurisdiction of the bankruptcy court upon dismissal of the case, it is beyond a bankruptcy court's powers to guarantee that the results that all creditors achieve outside of the bankruptcy court will be on a par with one another.

---

has been addressed as part of the Microsoft settlement. Finally, an indemnity claim in an unknown amount has been filed by a co-defendant in an anti-spam statute case. In Richter's case, aside from claims which are duplicates of claims filed in the OptIn case, there is a mortgage claim; two vehicle lease claims; about $75,000.00 in litigation claims; less than $10,000.00 of unsecured debts and the $1.3 million American Family coverage dispute claim that is settled by agreement upon dismissal of the cases.

6. In the context of this case, these are small claims, but the Court suspects that, in relation to the size and economic wherewithal of many of those claimants, the claims may be very significant.

7. Here, the Court accepts Infinite Monkeys' assessment of its own best interests. Otherwise it would appear to the Court that Infinite Monkeys is better off litigating its claims on the merits, in a home-state forum, with Microsoft removed from the equation.

If the bankruptcy court were required to give such guarantees, it could never dismiss a case under § 1112(b). In the case of *In re Mazzocone*, Judge Scholl observed that "when the bankruptcy purpose of a case no longer exists (or never existed), a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers to creditors." 183 B.R. 402, 412–13 (Bankr. E.D.Pa.1995), *aff'd*, 200 B.R. 568 (E.D.Pa. 1996). Thus, not only must a court seek to strike a balance between the interests of a debtor and its creditors, it must seek some balance among the interests of the individual creditors as well.

■■■ Section 1112(b)'s requirement that a court must examine the best interests of the estate, as well as the best interests of the creditors, strikes that balance. The best interests of the creditors test addresses the interests of the creditor body as a whole. It is inevitable that different creditors, even if similarly situated, will fare differently outside of bankruptcy. Therefore, the best interests of creditors test focuses on the interest of the entire creditor body; it does not focus on individual creditor interests.

■■■ The interests of individual creditors are protected by the requirement that a court examine the best interests of the estate. The focus of that test is upon the economic value of the debtor; it compares the economic value of the debtor in a converted case to its value after dismissal. *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr.E.D.Cal.1992) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. The estate is defined in terms of interests in property.") A bankruptcy court cannot insure that all creditors will make a pro-rata recovery of their debts after dismissal of a bankruptcy case. But, when a court determines that a debtor's economic value is likely to be greater by dismissing the case rather than converting it, the court maximizes the opportunity of individual creditors to recover their claims.

As the Court noted above, the Debtors' business is very profitable. In most cases, this type of service business, without substantial hard assets has significantly greater economic value as an operating entity as opposed to being the subject of a bankruptcy liquidation. *See, e.g., Matter of NuGelt, Inc.*, 142 B.R. 661, 669 (Bankr. D.Del.1992). But in this particular case, dismissal also means the reduction of a $57 million claim against the Debtors down to $7 million, not to mention the elimination of the American Family claims. That makes the economic value of the Debtors substantially greater outside of bankruptcy and the benefit to the estate even more compelling.

To the extent that the Infinite Monkeys claim is meritorious, the Court believes that its opportunity to realize the value of that claim after dismissal is greater than it would be in a converted case. Inside the bankruptcy it is competing against Microsoft and American Family for a share of the Debtor's assets. Those creditors vanish after dismissal. While $7 million of the Debtors assets vanish with them, that represents profit from only about ten months of the Debtors' business operations. Upon conversion, that economic engine is turned off and Infinite Monkeys can do nothing more than compete with the remaining creditors for a share of the carcass. But, by examining the best interests of the estate and determining that the economic value of the Debtors is greater upon dismissal, the Court also insures that individual creditors, like Infinite Monkeys, receive the best opportunity available to recover on their claims.

*H. Fed. R. Civ. P. 9019 is Inapplicable to the Microsoft and American Family Settlements*

 Infinite Monkeys argues that the Microsoft and American Family Settlements must be approved by the Court under Fed. R. Bankr. P. 9019. But the terms of these settlements are unusual. They are ineffective if this Court does not dismiss the Debtors' cases. Because these settlements only take effect if the Court grants the Debtors' motion for dismissal, the terms of the settlements cannot have an effect on any active bankruptcy case. For that reason, the Court finds that the provisions of Rule 9019 are inapplicable.

There are courts which view Rule 9019's procedure to seek court approval of a compromise as permissive instead of mandatory because the rule employs the permissive "may" rather than the mandatory "shall." *See, e.g., In re Dalen*, 259 B.R. 586, 598–99 (Bankr.W.D.Mich.2001) ("Rule 9019(a) is intended to be nothing more than a safe harbor for trustees who wish to avail themselves of the bankruptcy court's protection prior to entering into settlement agreements.... Whether the trustee seeks such approval is left entirely to her discretion."); *contra In re Signet Industries, Inc.*, 165 F.3d 28, 1998 WL 639168, *3 (6th Cir.1998) ("As Rule 9019 makes clear, a trustee (or debtor-in-possession) may not enter into a compromise agreement ... without the approval of the bankruptcy court."). It appears more likely that the permissive language of Rule 9019 refers, not to the trustee's discretion to seek approval, but to the court's discretion to approve, or disapprove, a particular settlement. The rule says that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). It does not say "the trustee may·seek approval" or anything else of that nature. But this is not an issue this Court is called upon to de-

cide. What is important here is not how the rule is worded but whether or not the rule applies in the first instance. It does not.

 The purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a trustee or debtor-in-possession that affects the bankruptcy estate. *Saccurato v. Masters, Inc. (In re Masters, Inc.)*, 149 B.R. 289, 291 (E.D.N.Y.1992) ("debtors cannot bind their estates to compromises absent bankruptcy court approval") (citing *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988)). But, there is no intention in these settlements to bind the bankruptcy estates. In fact, the testimony was to the contrary. These settlements are a nullity if the Debtors remain in bankruptcy. It is only after dismissal, and after dissolution of the bankruptcy estates, that the settlements may take effect. Under the circumstances of this case, there simply is no issue with respect to binding the bankruptcy estate to the settlement agreements reached by the parties, so Rule 9019 has no application.

 Furthermore, if these settlements were noticed out, and if an application were made under Rule 9019 for the Court's approval in the context of ongoing bankruptcy cases, it is highly likely that they would receive approval. Where an application under Rule 9019 is appropriate, the Court's job is to determine whether a given settlement is fair and equitable to the estate. *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 585–86 (7th Cir.1994). In making its determination, the Court gives some deference to the business judgment of the debtor-in-possession. *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y.1987) ("In determining whether to approve the trustee's application to settle a controversy,

the bankruptcy court does not substitute its judgment for that of the trustee."), *aff'd,* 863 F.2d 45 (2nd Cir.1988).

The American Family settlement eliminates American Family's $1.3 million claim against Richter and its $1.4 million claim against OptIn. Instead, the agreement provides a payment from American Family to the Debtors. The Microsoft settlement reduces a $57 million claim to $7 million and subjects the Debtors to monitoring of their operations. The results achieved by the Debtors, through mediation of these litigation matters, bear every indication of settlements reached in the sound business judgment of the Debtors and with results which are fair and equitable to the creditor body as a whole.

### III. CONCLUSION

Based upon the evidence presented at hearing, the Court concludes that the material change in the Debtors' circumstances and the financial viability of Debtors' business provide adequate cause under § 1112(b) to support conversion or dismissal of the case. The Court finds that dismissal is in the best interest of the creditors because the greatest portion of the creditor body stands to benefit from dismissal of the case. Dismissal will immediately be followed by consummation of the settlements with Microsoft and American Family. At the same time, the Court does not find substantial prejudice to the interests of Infinite Monkeys in being required to litigate its claim in the state or federal courts of California against a defendant with the financial wherewithal to deal with any judgment that may be potentially entered against it.

There are a number of matters that remain pending in this case. The dismissal of this case renders those matters moot and they will be denied on that basis. The pending matters, which will be denied, are: *Motion of Microsoft Corporation for Order Dismissing Debtors' Chapter 11 Cases* (docket # 51); *Motion of Microsoft Corporation for Relief from the Automatic Stay Imposed by 11 U.S.C. § 362 with Respect to Pending State Court Litigation* (docket # 52); *OptInRealBig.com's Objection to Claim of Infinite Monkeys & Co., LLC* (docket # 306); Infinite Monkeys' *Motion to Require Adequate Disclosure of Escrow Disposition* (docket # 354); Infinite Monkeys' *Second Motion to Require Adequate Disclosure by Debtors in Possession, and Request for Restriction on Use of Estate Assets* (docket # 359); Infinite Monkeys' *Third Motion to Require Adequate Disclosure and/or Required Approval of: 1) Criminal Investigation of Debtors; 2) Debtors' Retention and Payment of Criminal Defense Counsel; and, 3) Backdating and Funding of Escrow Agreement* (docket # 409); and *Debtor Scott Allen Richter's Corrected Motion to Approve Margin Trading* (docket # 413). Therefore, it is

**ORDERED** that the *Joint Motion of Debtors, OptinRealBig. com, LLC, and Scott Allen Richter, to Dismiss Case for Good Cause* is GRANTED. Case Nos. 05–16304–HRT and 05–16340–HRT are hereby DISMISSED. It is further

**ORDERED** that *Motion of Microsoft Corporation for Order Dismissing Debtors' Chapter 11 Cases* (docket # 51); *Motion of Microsoft Corporation for Relief from the Automatic Stay Imposed by 11 U.S.C. § 362 with Respect to Pending State Court Litigation* (docket # 52); *OptInRealBig.com's Objection to Claim of Infinite Monkeys & Co., LLC* (docket # 306); Infinite Monkeys' *Motion to Require Adequate Disclosure of Escrow Disposition* (docket # 354); Infinite Monkeys' *Second Motion to Require Adequate Disclosure by Debtors in Possession, and Request for Restriction on Use of Estate*

*Assets* (docket # 359); *Infinite Monkeys' Third Motion to Require Adequate Disclosure and/or Required Approval of: 1) Criminal Investigation of Debtors; 2) Debtors' Retention and Payment of Criminal Defense Counsel; and, 3) Backdating and Funding of Escrow Agreement* (docket # 409); and *Debtor Scott Allen Richter's Corrected Motion to Approve Margin Trading* (docket # 413) are all DENIED as moot.